**WRIGHT et al. v. SALTMARSH.**

No. 23852.    Oct. 15, 1935.

as plaintiffs and the defendant in error as defendant.

This action was instituted by the plaintiffs filing their petition in the district court of Grant county, on the 11th day of March, 1931, and subsequently filing an amended petition. The defendant having filed her answer and cross-petition, issues were finally joined between said parties by the plaintiffs filing their reply and amendment thereto. Various demurrers and motions were filed to the pleadings by both parties to said action, but as a judgment of dismissal of this action was rendered against the plaintiff on objection of defendant to the introduction of evidence, it would serve no useful purpose to consume time and give attention to other then the pleadings which finally made up the issues between said parties. The facts out of which this case grew, as shown by the pleadings and admissions of the parties, are substantially as follows:

Geo. G. Saltmarsh and the defendant were married in Rice county, Kan., in the month of May, 1911. At the time of the marriage of said parties, Geo. G. Saltmarsh was the owner of a mercantile store located at Lyons, Kan. In September, 1913, Geo. G. Saltmarsh exchanged his stock of goods in said store at Lyons, Kan., for a farm in Grant county, Okla., and which was then owned by Charles Cain and Millie F. Cain, the brother-in-law and sister of said Geo. G. Saltmarsh. At the time of the exchange of the stock of goods at Lyons, Kan., for the Grant county, Okla., farm, there was a mortgage against said land for the sum of $3,500. The value placed upon said farm in the exchange for said stock of goods was $8,000. At the time of the exchange, Geo. G. Saltmarsh paid off the mortgage on said farm and received as evidence of the amount of said payment the personal note of Charles Cain and Millie F. Cain, for the sum of $3,500. After making the exchange of the stock of goods for the Grant county farm, Geo. G. Saltmarsh and his wife removed to the state of California, in which state he died on the 15th day of September, 1915. At the time of the death of Geo. G. Saltmarsh he owned some real estate in the state of Kansas, as well as personal property, consisting of stocks, notes and bills receivable. In October, 1915, the defendant filed a petition in the probate court of Rice county, Kan., asking appoinment as administratrix of the estate of her deceased husband. Upon her petition she was appointed

J. E. Falkenberg and W. H. C. Taylor, for plaintiffs in error.

Breeden & Breeden, for defendant in error.

PER CURIAM. The parties will be designated hereinafter as they appeared in the trial court, that is, the plaintiffs in error

administratrix of the estate of her deceased husband, and at the conclusion of said probate proceedings was awarded the entire estate in said state as being the sole heir of her deceased husband, Geo. G. Saltmarsh.

On November 1, 1915, the defendant filed a petition in the county court of Grant county, Okla., being case No. 2218, asking the appointment of herself as administratrix of the estate of her said deceased husband. Further proceedings were had in said county court on the petition of said Mary O. Saltmarsh, but no appointment was made thereunder.

At the time of the death of Geo. G. Saltmarsh, he left him surviving W. J. Saltmarsh, his father, who resided at La Plata, Mo. W. J. Saltmarsh died intestate, on the 26th day of July, 1919. At the time of the death of W. J. Saltmarsh, he left him surviving as his heirs, Dora A. Wright, Rosa Wright, Ida Buck, R. S. Saltmarsh, Goldie Slaughter, Hubbard Saltmarsh, and Mary Belle Saltmarsh Hughes, who are the plaintiffs in error in this case.

On the 27th day of September, 1919, after the death of W. J. Saltmarsh, Mary I. Slaughter and Rosa Wright filed a petition, in case No. 2616, in the county court of Grant county, Okla., requesting the appointment of Dwight Wilson of Medford, Okla., as administrator of the estate of Geo. G. Saltmarsh, deceased. An order was made by said court for the hearing of said petition to be had on the 9th day of October, 1919. Notices of the hearing of said petition were duly posted and published. On October 14, 1919 Mary O. Saltmarsh filed in said cause, case No. 2616, her written objections to the appointment of Dwight Wilson as administrator of the estate of Geo. G. Saltmarsh, deceased, and asked that she be appointed administratrix of said estate, and stated that she was the surviving wife of Geo. G. Saltmarsh, deceased, and a competent person to administer said estate, that she had never waived her right to an appointment as such administratrix, and was entitled under the law to such an appointment. She further alleged that as such surviving wife she inherited one-half of said estate and was personally interested in the administration thereof; that she was a nonresident of the state of Oklahoma, but that before entering upon the duties of such trust she would appoint a resident agent as required by the statutes.

On the date set for the hearing of said petition the hearing thereof was continued by the court until the 13th day of October, 1919. On the hearing of said petition and objections interposed by Mary O. Saltmarsh, the court found the allegations of the petition to be true and also found the allegations of the objections to be true, and further found that Mary O. Saltmarsh, the widow of said deceased, under the law was entitled to and a fit and proper person to be appointed administratrix of said estate, and ordered that letters of administration upon said estate be issued to Mary O. Saltmarsh, upon her taking and suscribing the oath of office required by law and executing a bond in the penal sum of $400. On the same date letters of administration were issued to said Mary O. Saltmarsh, E. H. Breeden of Medford, Okla., was appointed as her resident agent. On the date of the filing of the petition by Rosa Wright and Mary I. Slaughter in case No. 2616, asking the appointment of Dwight Wilson as administrator of the estate of Geo. G. Saltmarsh, said petitioners also made application by petition, for the appointment of an administrator of the estate of W. J. Saltmarsh, deceased, and in pursuance thereof Lois Tharp was appointed administratrix of said deceased estate, and qualified as such and entered into the discharge of the duties of the trust. On the 1st day of March, 1920, Mary O. Saltmarsh filed her final account and petition for distribution of said estate, in which petition she alleged that at the time she and the decedent were married he was running and operating a general store, and after their marriage deceased and petitioner operated said store and built the same up and increased the stock and later traded the same for the Grant county farm, and that said farm was acquired by the joint industry of herself and husband during coverture. Lois Tharp administratrix of the estate of W. J. Saltmarsh, deceased, filed written objections to the distribution of said estate to Mary O. Saltmarsh, and alleged that W. J. Saltmarsh, as the father of Geo. G. Saltmarsh, was entitled to one-half interest in said real estate, and that upon the death of W. J. Saltmarsh his heirs were entitled to one-half of the Grant county farm. The final account and petition for distribution filed by Mary O. Saltmarsh and the objections filed to said final account came on for hearing on the 29th day of March, 1920. At said hearing, Mary O. Saltmarsh, administratrix, appeared in person and by her attorney, and the objector, Lois Tharp, administratrix, of the estate of W. J. Saltmarsh, R. S. Saltmarsh, Dora Wright Mary I. Slaughter, Ida Buck, Millie F. Cain, Rosa Wright, Hubbard Saltmarsh, and Mary Belle Saltmarsh, heirs of W. J.

Saltmarsh, appeared by J. B. Drennan and R. O. Jones, their attorneys. Millie F. Cain appeared in person. On the hearing of said final account and petition for distribution and objections interposed thereto, the court found that the Grant county farm was acquired by the joint industry of Geo. G. Saltmarsh and his wife, Mary O. Saltmarsh, during coverture, and that she was entitled to, and was by order of the court distributed the entire estate, and the court further found and adjudged that Mary O. Saltmarsh was the owner of the proceeds derived therefrom and the objectors had no interest therein. Notice was given in open court by said objectors of their intention to appeal from the order of distribution, but no appeal was taken therefrom.

The issues in the action, consisting of the petition of plaintiffs, answer of the defendant, and the reply and amendment thereto, having been finally settled, the action came on for trial on the 12th day of February, 1932. The plaintiffs having produced their first witness, one I. H. Ruth, the defendant interposed an objection to the introduction of any testimony on the plaintiffs' amended reply, which motion was by the court sustained, and the court rendered its judgment against said plaintiffs, dismissing the action with prejudice.

Before entering into a further consideration of this case on its merits, we will dispose of a motion filed by the defendant to dismiss the appeal based upon the ground and contention that this court is without jurisdiction to entertain said appeal, for the reason that the case-made was not served upon the defendant until the time had expired under the first order of the court extending the time for making and serving a case-made. Attorneys for the defendant contend in their brief that the order extending the time for making and serving a case-made was made by the court on the 12th day of February, 1932; that in extending the time for a period of 30 days the order made by the court on the 17th day of March, 1932, was four days after the time expired on the first order in which to make and serve said case-made.

The journal entry of the judgment in this case shows that on the 26th day of February, 1932, the motion for a new trial was overruled, and on that date the court made its order extending the time for making and serving a case-made for a period of 30 days. When the order was made on the 26th day of February, 1932, extending the time for a period of 30 days in which to make and serve a case-made, the 15-day period in which to make and serve a case-made as provided by section 534, O. S. 1931, had not expired, and therefore the court had jurisdiction to make such an order. When the court made its order on the 17th day of March, 1932, extending the time for making and serving a case-made for a period of 30 days, the time for making and serving the same had not expired under its order of February 26, 1932, and therefore the trial court had not lost jurisdiction to make such an order or extension. The difficulty lies in the fact that it is contended by the attorneys for the defendant that the first order was made on the 12th day of February, 1932, when, in fact, the journal entry of the judgment shows that the same was made on the 26th day of February, 1932. We agree with counsel that the motion for a new trial was neither proper, necessary nor essential, and that the filing of the motion and overruling of the same would in no way extend the time in which to make and serve a case-made, but that has nothing whatever to do with the orders made by the court extending the time in which to make and serve a case-made, and as the same was made and served within the time provided by the orders of the court, there is no merit to defendant's contention and the motion to dismiss said appeal is therefore overruled.

This action brought by the plaintiffs is one in ejectment, in which the petition alleges that Geo. G. Saltmarsh died intestate and without issue, on the 21st day of September, 1915 in Los Angeles county, Cal., and left him surviving as his sole and only heirs at law the defendant, Mary O. Saltmarsh, and his father, W. J. Saltmarsh; that W. J. Saltmarsh dies on the 26th day of July, 1919, and left him surviving his heirs, who are the plaintiffs in this case; that Geo. G. Saltmarsh at the time of his death was the owner in fee simple of and in possession of the following described real estate in Grant county, Okla., the southwest quarter of section 9, township 27 north, range 5 west. Said petition then deraigned said title and alleged that Mary O. Saltmarsh was in possession of said land and denying the ownership, right and title of the plaintiffs thereto; that the plaintiffs are the owners of one-half interest in said land and entitled to immediate possession of same.

For a second cause of action plaintiffs seek to recover for rents and profits arising from said land held and retained by the defendant.

230

The answer and cross-petition denies all material allegations of plaintiffs' petition; admits that she is the widow of Geo. G. Saltmarsh, and that he died in 1915; that at the time of his death he was the owner of and in possession of the land described in said petition. She further alleges that prior to 1913 she and her husband conducted a store at Lyons, Kan.; that W. J. Saltmarsh died in July, 1919, leaving as his heirs these plaintiffs. She further alleges that on September 7, 1919, the heirs of W. J. Saltmarsh filed their petition in the county court of Grant county, Okla., in case No. 2616, praying the appointment of an administrator of the estate of Geo. G. Saltmarsh, deceased. And at the same time and date said heirs filed their petition for an administrator of the estate of W. J. Saltmarsh, deceased. She further alleges the filing of the final account and petition for distribution of said estate; that Lois Tharp, administratrix of the estate of W. J. Saltmarsh, filed an objection to said account and petition for distribution, and that on the 29th day of March, 1929, a judgment and order was made by said county court distributing the land to said defendant, and said judgment or order was not appealed from. She further alleged that a settlement was had between the plaintiffs and defendant subsequent to the order of distribution, in which said heirs were paid the sum of $250 for a compromise of said action. To said answer is attached a copy of the decree of distribution and made a part of the answer.

To the answer of the defendant the plaintiffs filed their reply, which consists, first, of a general denial of each, every and all the allegations contained in said answer; second, that the judgment and order of the county court of Grant county awarding the entire estate to the defendant was obtained by false and fraudulent representations in that the defendant and W. J. Saltmarsh, after the estate of Geo. G. Saltmarsh had been administered upon by the probate court of Rice county, Kan., had entered into a verbal agreement that the said W. J. Saltmarsh should have an undivided one-half interest in the land in controversy in this case, and that no administrator should be appointed; third, that the defendant willfully, wrongfully, fraudulently, and knowingly concealed from the county court of Grant county the facts of such an agreement, and that the said county court had no information of such facts at the time of the settlement and order of distribution; fourth, that the defendant concealed from the county court of Grant county the facts of the administration of the estate of Geo. G. Saltmarsh in the state of Kansas and the said court had no knowledge of such proceedings, and it was further alleged in the reply that the alleged final decree and judgment is void upon its face for the reason that the plaintiffs were neither heirs, devisee or legatees of Geo. G. Saltmarsh, deceased, and that the county court of Grant county, Okla., had no jurisdiction over the same because their rights could not be determined in the administration proceeding on the estate of Geo. G. Saltmarsh. It was further alleged in the amendment to said reply that the oral agreement entered into between the defendant and W. J. Saltmarsh was carried out and executed by the parties for a period of about four years, and during said time said defendant paid to W. J. Saltmarsh one-half of the rents and profits from said land; that at one time she offered to purchase this one-half interest therein for the sum of $2,500. But prior to the administration proceedings which were pending in the county court of Grant county, the defendant served notice upon I. H. Ruth & Company, the agent in charge of and having the letting of said land, that she and the plaintiff had divided said land; that due to the fact of the fraudulent concealment by defendant, the plaintiffs could not discover such fraud until shortly prior to the institution by them of this action and they had no knowledge of the same; that said plaintiffs were residents of the states of Washington, California, and Missouri. Plaintiffs further alleged in said amended reply that defendant was in possession of said land as joint tenant of W. J. Saltmarsh, deceased, for a period of more than four years and five months prior to his death and defendant's claim, if any, was barred by the three-year statute of limitations.

As the judgment was rendered in this action against the plaintiffs on the introduction of evidence on the claimed insufficiency of plaintiffs' reply, we will first determine the effect on the pleadings of the parties of an objection to the introduction of evidence, and second, the sufficiency of such pleadings.

An objection to the introduction of evidence on the grounds that the reply is insufficient to controvert or put in issue the matters or facts alleged in defendant's answer, is in the nature of a general demurrer to such reply.

In the case of Wey v. City Bank et al., 29 Okla. 313, 116 P. 943, in passing upon

the effect of an objection to the introduction of evidence, the court says:

"An objection to the introduction of evidence on the ground that the petition does not state a cause of action is equivalent to a demurrer to the petition."

The case of Shultz v. Jones, 3 Okla. 504, 41 P. 400, states the rule as follows:

"On the trial of the cause when the plaintiff offered his first testimony, the defendant objected to the introduction of any testimony on behalf of the plaintiff for the reason that the petition failed to state facts sufficient to constitute a cause of action and for the reason that the court was without jurisdiction to hear the matter in controversy. Held, that such objection was equivalent to a demurrer to the petition and should have the same effect."

The case of Carson v. Crossman, 99 Okla. 71, 225 P. 947, in passing upon the effect of an objection to the introduction of evidence, says:

"An objection to the introduction of evidence on the ground that the petition does not state a cause of action is equivalent to a demurrer to the petition."

The above rule has been so many times announced by the court that in this state it is the settled construction to be placed upon the effect of an objection to the introduction of evidence on the grounds of insufficiency of a pleading.

The further effect of a demurrer to the pleadings is that a general demurrer searches the record and reaches the first defective pleading, and, as an objection to the introduction of evidence on the ground that a pleading is insufficient, is equivalent to a general demurrer as shown by the above-cited decisions of this court. The objection to the introduction of evidence on the part of the defendant in this case required the court to search the records and determine the sufficiency of defendant's answer.

The case of Crow v. Hardridge et al., 73 Okla. 136, 175 P. 115, says:

"A general demurrer searches the record and reaches the first defective pleading. Where a general demurrer to the answer is filed, if the petition fails to state a cause of action such demurrer will be sustained to the petition."

In that case the court further says:

"The rule is so well established as to need no citation of authority that a demurrer to an answer on the ground that it does not state facts sufficient to constitute a defense searches the record and will reach back to the petition, and if it be found that no cause of action is stated in the petition the demurrer will be sustained thereto."

Sweet v. Boyd, 6 Okla. 699, 52 P. 939, and the case of Chouteau v. Hoss et al., 118 Okla. 76, 246 P. 844, in referring to the case of Crow v. Hardridge et al., supra, announce and affirm that rule.

The application of the above rules is essential in this case for the reason that neither in the plaintiffs' petition nor in their reply do they allege the fact of the order of distribution made by the county court of Grant county, wherein it distributed the entire estate to the defendant. But the answer of the defendant pleads such an order as a defense, and there is a copy of said order attached to said answer and made a part thereof. The chief bone of contention in this case is over and concerning the effect of the order of distribution above referred to. It is contended on the part of the plaintiffs that the judgment and order of distribution made by the county court, wherein it distributed the entire estate to the defendant, is not binding on these plaintiffs and is not res judicata as to them for the reason that in the administration proceedings of Geo. G. Saltmarsh, in which said order of distribution was obtained, the court could determine only the heirs of Geo. G. Saltmarsh, and as plaintiffs were not the heirs of Geo. G. Saltmarsh, but the heirs of W. J. Saltmarsh, the county court was without jurisdiction by its judgment and decree of distribution to determine their rights as they claimed adverse to the estate of Geo. G. Saltmarsh. On the other hand, the defendant contends that the order of distribution made by the county court of Grant county in the proceedings of the administration and probate of the estate of Geo. G. Saltmarsh, wherein it held that the defendant was entitled to the entire estate (being the farm in question) and that the objectors, who are the plaintiffs herein, have no interest therein, is binding and conclusive on these plaintiffs, in fact, the whole world, and is res judicata as to them, and upon that theory the trial court sustained an objection to the introduction of any evidence by the plaintiffs, as we understand, for the reason that the reply of the plaintiffs did not put in issue the fact of such order made by the county court.

The effect of an objection to the introduction of evidence being to search the record and to reach the first defective pleading, and as the answer of the defendant pleaded the order of distribution, and she

having made the objection to plaintiffs' introduction of evidence, if the contention on the part of the plaintiffs with reference to the effect of the order of distribution is correct, then the trial court was in error in sustaining said objection. On the other hand, if the contention of the defendant with reference to the effect of the order of distribution was correct and the allegations in plaintiffs' reply, other than the above contention, were insufficient to constitute a defense to defendant's claim of ownership of said land, then no error was committed in sustaining said objection.

At the time of the death of Geo. G. Saltmarsh, on the 15th day of September, 1915, section 1617, O. S. 1931, was in force, and that portion of said section contained in paragraph 2, which governs the devolution of the estate of Geo. G. Saltmarsh, deceased, is as follows:

"If the decedent leave no issue, the estate goes one-half to the surviving husband or wife and the remaining one-half to the decedents, father or mother, * * * provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture and there is no issue, the whole estate shall go to the survivor."

This is the statute of inheritance which determines the heirs of one dying intestate leaving an estate and a surviving spouse, no issue, and a surviving parent or parents. Those who inherit under such a statute of descent and distribution are known as heirs, and upon the death of such decedent the law casts the estate immediately to the heirs of said decedent.

It is said in the case of Moffett et al. v. Conley et al., 63 Okla. 3, 163 P. 118:

"At common law, 'descent' or 'hereditary succession' is the title whereby a man on the death of his ancestor acquires his estate by right of representation, as his heir at law. An 'heir,' therefore, is he upon whom the law casts the estate immediately upon the death of the ancestor; and an estate, so descending to the heir, is in law called the 'inheritance'."

Section 1358, O. S. 1931, is in part as follows:

"Upon the final settlement of the accounts of the executor or of administrator, or at any subsequent time, upon the application of the executor or administrator or of any heir, legatee or devisee, the court must proceed to distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto."

Who are those entitled thereto? The answer is those who are heirs of the decedent, who died intestate seized of an estate, and residue, of course, means the residue of the estate in the hands of the executors and administrators.

The estate above referred to is the one over which the court has obtained jurisdiction by the same being brought before it for the appointment of an administrator or executor.

Therefore, the above section of the statute empowers the court to determine who are the heirs of a deceased person over which it has jurisdiction to make an order of distribution of his estate to his heirs. It is true, as contended by plaintiffs, where the county court obtains jurisdiction over a particular estate, that in the proceedings of the administration of such an estate it has no power or jurisdiction to determine the heirs of any other deceased person.

When administering upon the estate of Geo. G. Saltmarsh, deceased, the court in that proceeding had no jurisdiction to go outside of the administration of that estate and determine the heirs of W. J. Saltmarsh, deceased.

It did have the jurisdiction, however, to determine the heirs of Geo. G. Saltmarsh, deceased. At the death of Geo. G. Saltmarsh, the estate descended, under the facts in this case, to his wife, or to his wife and W. J. Saltmarsh. W. J. Saltmarsh having died some four years after the death of Geo. G. Saltmarsh and before the institution of the probate proceedings, the only way the heirs of W. J. Saltmarsh could be determined would be through an administration upon his estate.

In the case of Jones et al. v. Douglass et al., 152 Okla. 89, 5 P. (2d) 345, this court held that in the administration upon a mother's estate after the son's death, mother having died before the son, the determination of heirship of said son was not res judicata, so as to preclude the same heirs from asserting their claim to the estate so inherited by the son from the mother.

The facts in the above case are that Morleyar Fish, a full-blood Creek Indian, died in 1905 and left her surviving a son, Johnson Fish, and her husband, Jonas Fish. Shortly afterwards, Johnson Fish died, and subsequently an administrator was appointed of the estate of Morleyar Fish, and at the conclusion of the proceedings a decree of distribution was made decreeing to Jonas Fish, the surviving husband, the entire estate. It was contended in the above case

that since the county court decreed the entire estate to Jonas Fish, the decree was binding and conclusive against the heirs of the deceased son, Johnson Fish. This court in its opinion in that case said:

"The estate of Johnson Fish, deceased, was not administered upon by the county court. It had no jurisdiction when administering upon the estate of the mother, Morleyar Fish, deceased, to determine therein the heirship of the son, Johnson Fish, deceased. * * *"

"In the case of Lincoln v. Herndon, 141 Okla. 212, 285 P. 120, in second paragraph of the syllabus, the following rule being announced:

" 'Where one seized of an estate of inheritance dies prior to statehood and the estate descends to an infant who dies shortly thereafter, an attempted administration upon the estate of the first deceased, after the death of the latter, and a determination of the heirs of the first in such proceeding, will not operate as res judicata so as to preclude the heirs of the infant from asserting their claims to the estate of the infant, which it inherited from the first deceased. Section 1359, C. O. S. 1921, is not applicable.'

"In the body of the opinion the court said:

" 'In other words. in the instant case the inheritance is from the unnamed infant and not from its mother from whom the estate came. The heirs of the child are to be determined and not the heirs of the deceased mother. As it is conceded that the child was the sole heir of its mother. If the heirs of the mother were to be determined, the proceedings and heirship in the county court would be final and conclusive. In this circumstance, section 1359, C. O. S. 1921, is inapplicable'."

The plaintiffs, in support of their contention, urge the last above-cited case, and the case of Homer v. Lester, 95 Okla. 284, 219 P. 392, as cases decided in this jurisdiction which support their contention.

An examination of the cases of Lincoln v. Herndon and Homer v. Lester will disclose that many of the facts upon which those two cases were decided are not analogous to the facts involved in this case. In the body of the opinion of the Lincoln-Herndon Case, the court held that it was conceded that the child was sole heir of the mother, and further held, if the heirs of the mother were to be determined, the proceedings of heirship in the county court would be final and conclusive.

One of the facts in the Homer-Lester Case, upon which the opinion was predicated, is

that the land involved had been sold by the heirs of the one who died seized of the estate, and the purchasers were in possession at the time of the institution of the action by Nicie Homer to determine the heirship of the original owner, and therefore there was no estate of decedent left to administer upon, and this court held in the above case where the deceased intestate had been dead for a period of three years or more, and no lawful ground existed for proceedings in the county court, an alleged owner or record claimant desiring the determination of heirship must proceed in the district or superior court under House Bill 445 (Laws 1919, c. 261), by a suit in ejectment or to quiet title, as the circumstances mould the remedy.

It would avail nothing here to set out the further facts of the above-cited cases, or to discuss other cases cited by plaintiffs. The means of transmitting the title of an estate of a deceased person is through proceedings in the county court; and one dying intestate, the proceeding is by appointment of an administrator and distribution of the estate.

There is no limitation under our laws within which an administrator of a deceased person's estate may be appointed. House Bill 445 in no way limits the time in which the county court may administer upon the estate of one deceased, and therefore the county court of Grant county had jurisdiction to determine the heirs of the estate of Geo. G. Saltmarsh, and having so determined them the decree of distribution which became final concluded all persons claiming as heirs. Section 1359, O. S. 1931, says:

"In the order or decree the court must name the persons and the proportions or parts to which each shall be entitled and such persons may demand, sue for, and recover their respective shares from the executor or administrator or any person having the same in possession. Such order or decree is conclusive as to the rights of the heirs, legatees, or devisees. subject only to be reversed, set aside or modified on appeal."

The above section of the statute fixes the parties who are concluded by the decree of distribution, those parties being the heirs, legatees or devisees of the deceased person whose estate is being administered upon. Hogan v. Superior Court, Okmulgee County, 122 Okla. 295 254 P. 966; Teague et al. v. Smith et al., 85 Okla. 12, 204 P. 439; Gassin et al. v. McJunkin, 173 Okla. 1. 48 P. (2d) 320.

We therefore hold that the decree of distribution in the administration proceedings

of the estate of Geo. G. Saltmarsh determines the heirs of his estate and is binding and conclusive on these plaintiffs; that this action cannot be maintained and that the trial court did not commit error in sustaining an objection to the introduction of evidence.

The defendant insists that this proceeding is a collateral attack on the judgment and decree of distribution of the county court, and that therefore this action cannot be maintained. The record in the administration proceedings on the estate of Geo. G. Saltmarsh shows that W. J. Saltmarsh died subsequent to the death of Geo. G. Saltmarsh, and shows further that these plaintiffs are the heirs of W. J. Saltmarsh. In the decree of distribution the court held that W. J. Saltmarsh and his heirs had no right or interest in the Geo. G. Saltmarsh estate; in other words, that they did not inherit any of the estate of Geo. G. Saltmarsh for reasons given in the decree.

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." Griffin v. Culp, 68 Okla. 310, 174 P. 495.

This proceeding comes under the definition of a collateral attack. In other words, the method of the attack is collateral as distinguished from a direct attack; aside, however, from the method of the attack, the question involved is whether or not the county court had jurisdiction or power by its decree and judgment of distribution to bind these plaintiffs by such an order or decree. We have held that it had such power and jurisdiction, and therefore the judgment and decree of distribution cannot be assailed in this manner unless there was such fraud practiced in obtaining it as would be a ground for avoiding the judgment. Sockey et al. v. Winstock et al., 43 Okla. 758, 144 P. 372.

The plaintiffs contend as one of their rights of recovery that there was an agreement on a family settlement between the defendant and W. J. Saltmarsh, in which it was agreed that W. J. Saltmarsh should be the owner of one-half interest in the land involved in this case, that the defendant should be the owner of the other half, and that in pursuance of said agreement the defendant paid the plaintiff one-half of the rents and profits from said land from the date of said agreement until the date of the death of W. J. Saltmarsh, and the further agreement between said parties was that no administrator should be appointed over the estate of said Geo. G. Saltmarsh

in Oklahoma, and that said parties should be co-owners of the said land.

Such allegations were made in the reply, and, of course, by the objection to the introduction of evidence on the part of the defendant, were admitted to be true. Plaintiffs contend that family settlements are favored by the law, and that such a settlement is binding on the defendant. Now, a family settlement is an arrangement or an agreement between the heirs of a deceased person, by which they agree upon the distribution or the management of said estate without the same being administered upon by a court having jurisdiction of such administration proceedings.

The records in this case show by the above statements and admissions that the defendant paid to W. J. Saltmarsh his share of the proceeds of the rents from said land, and further show that she did not after said agreement institute proceedings to have the county court of Grant county administer upon said estate. The heirs of W. J. Saltmarsh filed their petition for the appointment of an administrator and the administrator was appointed, not by request of the defendant, but by the heirs of W. J. Saltmarsh.

The defendant in contesting the right of appointment was by the court appointed administratrix of her deceased husband's estate.

These plaintiffs, who knew of such an agreement between the defendant and W. J. Saltmarsh, are in no position to complain that an administrator of the estate of Geo. G. Saltmarsh was appointed, when some of them made the application for such an appointment in the face of said agreement. On the other hand, if the farm was acquired by the joint industry of the defendant and her deceased husband after coverture, then W. J. Saltmarsh had no interest in said estate, was not entitled to any of the portion of the proceeds therefrom, and any verbal agreement that he might have had with the defendant under such circumstances would not bind the defendant, for family settlements are recognized between the heirs to the estate only, and not strangers to the estate or those who have no interest therein.

If the farm in dispute was not acquired by the joint industry of the defendant and her husband during coverture, then, of course, W. J. Saltmarsh would, as the father of the said deceased husband, be entitled to one-half of said farm, provided the mother of said Geo. G. Saltmarsh was not

living at the date of his death.

We therefore hold that these plaintiffs cannot complain of the appointment of an administrator; that these plaintiffs cannot avail themselves of the alleged agreement for the good reason that if W. J. Saltmarsh was not an heir of Geo. G. Saltmarsh, that is, if the farm in dispute was acquired by the joint industry of the defendant and her husband during coverture, the purported family agreement or settlement with him would not bind the defendant any more than her agreement with any other stranger to the estate would bind her.

On the other hand, if he was the heir of Geo. G. Saltmarsh, that is, if the farm in question was not obtained by the joint industry of the defendant and her husband during coverture, then the plaintiffs, if this action could be maintained, would be entitled, not by reason of the fact of such an agreement, to recover in this action, but by reason of their rights of inheritance under the law. The proof by competent witnesses of such an agreement would be competent as a circumstance to show that the farm was not acquired by the joint industry of the defendant and her husband during coverture, but could be used for that purpose only.

The petition in this case is based upon the theory and claim that these plaintiffs are the heirs of W. J. Saltmarsh and as such are entitled to one-half interest in the farm in dispute, and not upon the theory that there was an agreement between the defendant and W. J. Saltmarsh that he should own one-half interest therein.

The plaintiffs further complain that the trial court committed error in not holding that the facts stated in the answer and cross-petition were barred by the statutes of limitation, this upon the theory that the records show that the claim of the defendant was for personal services rendered and not that she acquired the farm through the joint industry of herself and husband.

We have been unable by diligent search to find anything in the proceedings in the county court of Grant county, or in the answer of the defendant, which purports to claim that the defendant was entitled to the entire farm for services rendered to her husband, and therefore the objection made by the plaintiffs cannot be urged in this case.

Plaintiffs next contend that the probate proceedings in the probate court of Rice county, Kan., are res judicata as to any claim she had or claimed for services rendered her deceased husband.

We have already held that there is nothing in the records showing that the claim of the defendant for her interest in the land was for services rendered. Further than that it is too elementary to require citation of authorities that the probate court of Rice county, Kan., had no jurisdiction over the estate of Geo. G. Saltmarsh in Oklahoma. The real estate of a deceased person for administration is subject to the jurisdiction of the court of the state where the land lies, and a distribution of the same is to be made and determined by the law of that state, not in a foreign state (In re Barnes' Estate, 47 Okla. 117, 147 P. 504); the rights of the heirs, legatees, and devisees of the estate of Geo. G. Saltmarsh in Oklahoma are to be determined by the laws of this state, and therefore a judgment and decree of distribution by the probate court of Rice county, Kan., distributing the entire estate of the decedent to the defendant in that state would not be an adjudication or determination of her rights to the estate in Oklahoma, and the above contention cannot be sustained.

Plaintiffs further complain that the trial court committed error in not permitting them to show that the decree of distribution by the county court of Grant county was obtained by fraud. The fraud alleged in plaintiffs' reply consists of the alleged facts that the defendant did not disclose to the county court of Grant county the probate proceedings had and concluded on the estate of her deceased husband in the state of Kansas; that she did not disclose to said court the fact of the family settlement so alleged, nor that she had during the lifetime of W. J. Saltmarsh paid to him one-half of the rents and profits under such family settlement, and that she had negotiated with W. J. Saltmarsh to purchase his one-half interest in the land. The contention that the decree of distribution was obtained by fraud in not disclosing the fact of the probate proceedings in the state of Kansas cannot be urged, for the reason that to disclose such proceedings would have no effect whatever upon the rights of these parties in Oklahoma, and therefore the defendant owed no duty to the county court to disclose to it what some other court in some other state had done with the property in that state.

Now, are the acts of fraud alleged of such character that would warrant the court in

setting aside a judgment? It is a settled rule in this jurisdiction, as well as in most other states, that fraud which vitiates judgment and which will authorize a court of equity to vacate it, is fraud extraneous of the record by which the court was imposed upon in the proceeding or by which the party complaining was prevented from having his interest fairly presented or fully considered by the court. City of Guthrie v. McKennon, 19 Okla. 306, 91 P. 851; Brown v. Trent, 36 Okla. 239, 128 P. 895; Ely Walker Dry Goods v. Smith, 69 Okla. 261, 160 P. 898.

Does the fact that the defendant failed to disclose to the county court certain knowledge which she possessed, which if disclosed might have defeated her recovery, come within the above rule? It was held in Burke et al. v. Bladine (Wash.) 169 P. 811, that it was not "fraud for a party to an action to fail to disclose to his adversary evidence that will defeat his own claim and sustain that of the adversary."

And in the case of Davis v. Seavey (Wash.) 163 P. 35:

"The only allegation of the complaint which in any way suggests fraud on the part of respondent is that she as executrix came into possession of the property and papers of the deceased, including the alleged codicil, and that she did not make known to the court the existence of the codicil in the course of the administration of the estate. This in no event could amount to anything more than an allegation that respondent did not present to the court upon the final distribution hearing the true facts touching the question of who is entitled to the property as distributee. In other words, this is nothing more than an effort to avoid the decree of distribution as a final adjudication because of the presenting of false proof touching the merits of the question of who is entitled to the property of the estate as distributee."

Now, the text-writers in dealing with this subject in 34 C. J. 475, announce the rule as follows:

"No party is bound to furnish weapons to his adversary or plead himself out of court; and the mere fact that he keeps silent and does not communicate to the court or to the adverse party the facts which would defeat his recovery is not such fraud as will justify a court in equity in enjoining a resulting judgment."

The above rule is sustained by the great weight of authority, and we therefore hold that the fact that the defendant failed to disclose to the county court before making its decree of distribution the facts of the agreements as alleged in the reply, and the payment of one-half of the rental to W. J. Saltmarsh, and the other facts alleged, do not constitute fraud or imposition on the county court as would warrant the court in this proceeding to set aside the order or decree of distribution, and what we have said above also applies to the fact that the defendant failed to disclose to the county court the proceedings had in the court of Kansas.

There are facts and circumstances in this case, suggested by plaintiffs and shown by the records, which point strongly to the conclusion that the land in question was not acquired by the joint industry of the defendant and her husband during coverture; but the county court having found from the evidence, after a hearing and contest between the parties, that the land was so acquired, and made its decree of distribution, the remedy for the relief of the parties was by appeal to the district court, and having failed so to do, their rights were concluded.

For all the reasons herein expressed, the order of the trial court sustaining an objection to the introduction of evidence and dismissing said action is sustained.

The Supreme Court acknowledges the aid of Attorneys Wm. O. Blake, Powell Clayton, and Glenn Alcorn in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Blake and approved by Mr. Clayton and Mr. Alcorn, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.