### RUSSELL v. DAVISON et al.

No. 28274. January 5, 1939.

Rehearing Denied Feb. 28, 1939.

Application for Leave to File Second Petition for Rehearing Denied March 27, 1939.

W. F. Schulte, for plaintiff in error.

Green & Farmer, for defendants in error.

HUDSON, Special Justice. This is an appeal by the plaintiff in error in an action for damages brought by him for failure of the defendants in error to deliver a legacy consisting of certain theatrical equipment. Answers of the respective defendants consisted of general denials and a plea of estoppel in pais. Trial was had to a jury and resulted in a verdict in favor of the defendants. Since the parties occupied the same position in the lower court as here, they will be referred to herein as plaintiff and defendants.

There is little controversy over the essential facts. Plaintiff was bequeathed certain personal property by the will of Lloyd C. House, which property was delivered to and accepted by him before the will of his testator was admitted to probate and before letters testamentary were issued to the executor nominated in said will. In the general inventory and appraisement, which was filed more than a year thereafter, the property so bequeathed to the plaintiff was listed as a part of the assets of the estate and was directed to be delivered to the plaintiff by decree of distribution entered by the probate court in October, 1932. The property had been taken from the possession of the plaintiff in May, 1932, in an action in replevin brought by the landlords of the plaintiff, and in which action the executor, Denver N. Davison, was not a party. Thereafter in 1935, the plaintiff made demand upon Denver N. Davison for the property, and upon the failure of said defendant to comply therewith, brought this action.

The plaintiff assigns nine specifications of error which he urges under the following general propositions, to wit: Error in the admission of evidence showing that he had received the legacy bequeathed him; error in giving instructions Nos. 4, 5, and 6; and error in refusing to give certain instructions. All of the contentions made resolve themselves into but one question and that is whether a delivery of a legacy may be made by an executor prior to a decree of distribution; that the plaintiff actually received the property bequeathed to him and used and claimed the same as his own until he lost it in the replevin action was admitted by his testimony from the witness stand, but he urges that, because the executor in filing his inventory and general appraisement thereafter listed such property therein and the decree of distribution subsequently entered vested title to said property in the plaintiff and directed that it be distributed to him, therefore the executor should not have been permitted to offer evidence to the effect that the plaintiff had actually and in fact received the specific property which had been bequeathed to him. In support of this contention we are cited to the cases of: Bluejacket State Bank v. First National Bank of Bluejacket, 155 Okla. 300, 9 P.2d 2; Hutson v. McConnell, 139 Okla. 240, 281 P. 760; Johnson v. First National Bank, 93 Okla. 194, 220 P. 47; Lusk v. Green, 114 Okla. 113, 245 P. 636; Pennington v. Newman, 36 Okla. 594, 129 P. 693; Territory v. Cooper, 11 Okla. 699, 69 P. 813; United States Fidelity & Guaranty Company v. Clutter, 74 Okla. 254, 179 P. 754; sections 1208, 1359, and 1381, O. S. 1931. A mere examination of the sections of the statute and the decisions cited is sufficient to show that they have no application to a fact situation such as is here involved and do not support the point which plaintiff seeks to make.

The common-law rule which permitted an executor before a probate to take possession and to distribute the personalty of his testator and to perform almost any act pertaining

to his office except to bring or defend suits has never prevailed in this country. Yet it has not infrequently been held that letters testamentary relate back to the date of the testator's death, after the will is probated, and validate acts done by the executor in the line of his duty before he is qualified (Mettler v. Warner, 243 Ill. 600, 90 N. E. 1099, 134 A. S. R. 388; Baker v. Cauthorn, 23 Ind. App. 611, 55 N. E. 963, 77 A. S. R. 443); and in the case of Langely v. Farmington, 66 N. H. 431, 27 A. 224, 49 A. S. R. 624, it was held that where payment was made to an executor named in a will who, without appointment of any court, administered the estate according to the terms of the will, such payment was a good defense to an action on the same demand brought by an administrator subsequently appointed for the same estate.

We are of the opinion that such is not only sound law, but comports with right and justice, As said by this court in the case of Parks v. Lefeber, 162 Okla. 265, 20 P.2d 179:

"Under the statutes of Oklahoma, the title to property devised or bequeathed by the terms of a will passes by operation of law to the devisees and legatees, in accordance with the provisions of the will, immediately upon the death of the testator, subject to the control of the county court for the purpose of administration, to sale by order of the county court for the purpose of paying the debts of the decedent, costs of administration, or such other charges as may exist against it, subject to partition by order of the county court, and subject to such other orders as the county court is authorized to make with reference thereto."

And further said in the body of the opinion as follows:

"A rule requiring an executor to file an inventory and to account as such in no wise operates to deprive a devisee of authority to convey the property devised to him."

In view of what has been said above, we can perceive no valid reason why an executor may not deliver a bequest to a legatee without delay if the executor is willing to do so and to accept the liability to creditors which would thereby be imposed upon him, nor why the legatee should not be willing to take such legacy, since the legatee thereby receives all that he is entitled to under the terms of the will without any further liability than would rest upon him should the delivery of the legacy be delayed until after the decree of distribution is entered.

We are therefore of the opinion that, when the plaintiff received, accepted, and used and claimed as his own the property which had been bequeathed to him, in an action by him against the executor for the value of said property, proof of such facts was properly admissible, and that the trial court did not err in admitting such evidence. In our opinion, this is not a collateral attack upon the record of the court or any of its proceedings, but a statement by the defendant, Davison, showing that the property had been delivered to the plaintiff, Russell.

The errors urged with reference to certain instructions given and with respect to certain other requested instructions refused are predicated upon the alleged error in the admission of evidence which we have discussed above, and since we have held to the contrary, they of necessity fall, and it will not be necessary to discuss them separately. We think the instructions as a whole fairly state the law applicable to the facts, and we fail to find prejudicial error in giving the instructions complained of. The record herein shows that the plaintiff was seeking to recover that which he had already received. The jury, who heard the evidence, under the instructions of the court has rendered an adverse verdict to the plaintiff, and we find no good reason for disturbing the verdict.

The judgment is therefore affirmed.

COOK, C. J., and SMITH, BODDIE, JETER, WILSON, McMAHAN, and BRUNSON, JJ., concur. BAILEY, J., concurs in conclusion.

All Justices of the court having certified their disqualification in the above cause, the following members of the bar were appointed by the Governor to serve as Special Justices: L. Keith Smith, of Jay; Omar M. Hudson, of Stigler; M. F. Boddie, of Oklahoma City; W. T. Jeter, of Mangum; L. T. Cook, of Purcell; R. O. Wilson, of Ponca City; C. B. McMahan, of Okmulgee; D. D. Brunson, of Ada; J. T. Bailey, of Cordell.

BAILEY, Special Justice (concurring in the conclusion). The majority opinion holds that all of the contentions herein resolve themselves into the one question of whether or not delivery of a legacy may be made by an executor prior to a decree of distribution. I am not in accord with that view. That an executor may do so, subject to the rights of creditors, and in the absence of other intervening factors, I think is correct as an abstract principle. Certainly, according to equitable principles, where the bare facts are that the legacy is delivered to the legatee by the executor prematurely and the legatee retains possession, he could not thereafter hold the executor liable for failure to deliver. He would be estopped, provided the executor could show by competent evidence

the facts supporting the estoppel. But, if, in order to establish such facts, testimony is offered which contradicts in a collateral proceeding the recitations and findings of a judicial record and decree, as in the instant case, I hold that such testimony should be excluded on timely and proper objection.

It is mentioned in the majority opinion that the property comprising the legacy was listed in the inventory as assets of the estate, and was directed to be delivered to plaintiff by the decree of distribution entered by the county court in October, 1932. What the opinion fails to state is that the inventory and the final account, both of which were verified by the executor on June 29, 1932, relate that this property is then in the possession of the executor, which is at a time subsequent to the time the oral testimony shows it to have been delivered to plaintiff. Following the listing and description of this property, together with other personal and real property, the inventory states:

"Total appraised value of all personal property, including money collected, all of which is still on hand and held by the executor, except which has been paid out to creditors of said estate under an order of the county court of Coal county, Oklahoma— $20,087.62."

The final account more clearly and emphatically recites that this property is in the custody of the executor on June 29, 1932; which date, we must remember, is more than a year after the delivery to plaintiff, according to the oral testimony. Following a description of the personal property in question, the final account contains this statement:

"That in addition to the money balance above set forth, your executor has in his possession and under his control the real estate and personal property above described, and that said property is now ready for distribution according to the terms of the will left by the said L. C. House, deceased."

Observe that the executor in the above statement is speaking in the present tense, on June 29, 1932.

Pursuant to this final account, and the inventory in which this property is listed as assets of the estate, the county court of Coal County, on the 19th day of October, 1932, found that the legacy in question constituted a portion of the residue of the estate, approved the final account, and ordered distribution according to the terms of the will. Nowhere in the county court proceedings is it suggested that the property was delivered prior to the time the will was admitted to probate.

The defendants were permitted to offer testimony showing that the property in question was not in the possession and under the control of the executor on June 29, 1932, as stated in the final account and inventory, but that it was delivered to plaintiff by the executor about a year prior to that date and before the will was admitted to probate; and that the property had never been in the possession nor under the control of the executor since its delivery to plaintiff.

Now, it is apparent that if this legacy was delivered to plaintiff prior to the date the will was admitted to probate, and never was again in the possession nor under the control of the estate, that it was in the possession of the executor on June 29, 1932, a year or more later, cannot be true. Whether this testimony reflects the true facts, or whether the court records do, is not the question so far as application of the rules of evidence is concerned. It sometimes happens that truth is crushed to earth, never to rise again, because of some rule of exclusion of evidence; for example, oral testimony which is in fact true, but which contradicts the provisions of a written contract. The pertinent circumstance relative to this testimony is that it contradicts the judicial records of the county court in an incidental proceeding in another court, and that constitutes a collateral attack.

A somewhat similar situation in principle arises when final judgment is rendered against the maker of a promissory note, and then when the judgment creditor undertakes to enforce it, the debtor attempts to avoid the judgment by showing that he paid the note before the suit was filed and before judgment was rendered.

Perhaps a more analogous illustration is where the defendant in a replevin suit, after final judgment has been entered against him, urges estoppel against the judgment by showing that the property was not in his possession when judgment was rendered, but that it had been delivered to plaintiff before suit was filed and before judgment; and that it had not been in his possession during any of the time that the judgment roll discloses it to have been.

Assuming in these illustrative cases that the property had in truth been delivered or the note paid before suit and before judgment, could such fact be admitted in evidence in the absence of extrinsic fraud and jurisdictional defects? I think not. The facts being known prior to the suit and prior to judgment, such facts should be asserted in defense of the action before judgment and not in avoidance of it afterwards in another proceeding.

In the instant case, if the legacy had been delivered prior to the date the executor in his inventory and final report listed it as assets and declared it to be in his possession and under his control, that fact could and should have been brought to the attention of the county court and correction made before or at the time the decree of distribution was entered, and not asserted afterwards in this action.

Plaintiff's action is based upon these judicial proceedings of the county court of Coal county, and the verity and finality with which they were clothed. The records were stripped of that verity and rendered impotent by oral testimony which contradicted the statements and circumvented the directions contained in the proceedings and decree.

This court has heretofore specified what constitutes a collateral attack:

"A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it." Wright v. Saltmarsh, 174 Okla. 226, 50 P.2d 694.

It has also been held that an inventory may not be impeached by a collateral attack. In United States F. & G. Co. v. Clutter, 74 Okla. 254, 179 P. 754, the following rule was declared:

"Where an inventory and appraisement in administration proceedings is filed, the inventory not being signed and sworn to by the administrator, but by another person, though otherwise purporting to be made by the administrator, the appraisement, however, being signed and verified by the appraisers duly appointed by the court, and the administrator files no other inventory and appraisement, * * * making no attempt to strike the inventory and appraisement from the files or to correct the same or to prepare or return another in due form, the administrator is estopped to deny that he came into possession of the property belonging to the estate."

The final account and petition for distribution contained the allegations and statements of the executor which induced the county court to render the final decree. In the very recent case of Liberty National Bank of Weatherford v. Semkoff, 184 Okla. 18, 84 P.2d 438, this court held that a party will not be permitted to question the correctness of his solemn judicial assertions so long as they remain a part of the record:

" 'Where a party to an action makes solemn admissions against his interest in a pleading, they should be treated as admitted facts, and he will not be heard to question the correctness thereof at any stage of the case in the trial court or on appeal, when properly preserved in a transcript or case-made so long as they remain a part of the record. If the statements or admissions were made under an honest mistake or misapprehension of what the facts really were, and he desires to be relieved from the effects thereof, he should apply to the trial court for leave to withdraw such admission or pleadings.' "

It is significant that the inventory in the Clutter Case above referred to was not verified, and the pleading in issue in the Semkoff Case, supra, apparently was not verified; while the inventory and the final report in the instant case were both verified by the defendant, Davison.

This court has consistently held that a decree of distribution of a county court is not subject to collateral attack:

"It is well settled that a decree of distribution made by the county court in probate, having jurisdiction of the settlement of the estate, on a hearing, as provided by sections 1359-1362, C. O. S. 1921, distributing to the heirs at law their respective shares of the estate of the deceased, is conclusive as to the rights of the parties interested in the estate, unless reversed or modified on appeal, and such a decree is not subject to collateral attack. Hogan v. Superior Court of Okmulgee County, 122 Okla. 295, 254 P. 966; Hilton v. Coyne, 103 Okla. 279, 229 P. 630; Teague v. Smith, 85 Okla. 12, 204 P. 439." (Hutson v. McConnell, 139 Okla. 240, 281 P. 760.)

The majority opinion correctly holds that title to the legacy passed to plaintiff immediately on the death of the testator. It is immaterial, therefore, that plaintiff may have asserted title to that which was already vested in him by operation of law. The fact that title has passed to him did not place him in possession, nor was it evidence of possession, since the legal right to possession was vested in the executor.

For the reasons hereinabove stated, I am of the opinion that the testimony relative to possession of the legacy prior to the date of the inventory and final account should have been excluded, except for the fact that plaintiff has waived the error of the trial court in admitting it. Plaintiff vigorously objected to this line of testimony at several stages of the trial. However, the witness, Patsy Greenan, testifying for defendants on direct examination, was permitted to testify without objection relative to possession of this theatrical equipment prior to the date of the inventory and final account:

"Q. Do you know, of your own personal knowledge, whether or not after that time Mr. Russell did make any arrangements of his own, for the renting of the building?

A. Yes, sir. Q. Do you know what approximate date that was, Mr. Greenan? A. It was shortly—I don't remember just when. Q. Well, do you know about how long it did run after, under Mr. Russell's regime? A. I would judge something between six months and a year. Q. You lived there in Coalgate all of this time, didn't you? A. Yes, sir. Q. Do you know whether or not Mr. Russell continued to run that theater until something happened that he moved the equipment out of the theater? A. Yes, sir. Q. Did Mr. Davison ever have possession of that theater or equipment or exercise any control over it? A. Not as I know of."

Also Paschal Ferrero, testifying for defendants, gave the following testimony on direct examination, to which no timely objection was made:

"Q. Mr. Ferrero, from April 24th, 1931, until the time Mr. Russell moved the stuff out of the theater, who was in possession of this theater equipment down there? A. Mr. Russell. Q. Was Mr. Denver Davison ever at any time in possession of it? A. No, sir."

Objections were interposed to other portions of the testimony of this witness, some of which were sustained and others overruled, but no objection was lodged against the testimony above quoted, except that at the close of defendants' evidence in chief, plaintiff renewed his objection to all the proof of possession of the property prior to June, 1932. This objection came too late:

"For reasons which are perfectly obvious, an objection to the introduction of testimony must be made in apt time, at the earliest possible opportunity after the objection becomes apparent, or it will be held to have been waived. It must be made at the trial, and at the time the evidence is offered, if counsel is then aware of the objection; and, in the absence of knowledge at that time, objections may be made when the objectionable nature of the evidence becomes apparent, or within a reasonable time thereafter. Subject to the above qualifications, an objection comes too late when made after the objectionable evidence has been admitted, and the court may properly refuse to strike it out. So, objection to the court's examination of a witness comes too late when made after the conclusion of the examination."

This court has held that timely objection must be made.

"A party to a suit cannot speculate upon the testimony to be introduced by the adverse party and, after the introduction of such testimony without objection, move to strike on the ground that such testimony is incompetent." International News Service v. News Publishing Co. et al., 118 Okla. 113, 247 P. 87.

It has also been determined that a party cannot complain of the admission of evidence of a particular issue where evidence of the same character has been admitted without objection. In Bower-Venus Grain Co. v. Smith, 84 Okla. 105, 204 P. 265, the court said:

"The defendants next complain of the admission of incompetent and irrelevant testimony on behalf of the plaintiff over their objection, and insist that the telephone conversation between the plaintiff and Fields, wherein Fields informed the plaintiff that the two cars of hay had been lost in a wreck, was hearsay, not having taken place in the presence of either of the defendants, and was self-serving; but we are of the opinion that the defendants cannot be heard to complain of the admission of this evidence over their objection, for the reason that later on in the testimony of the plaintiff he was permitted to testify to such conversation without objection, and it has frequently been held that a party cannot complain of the admission of evidence over his objection, where other evidence of the same tenor was admitted without objection. 3 C. J. 815; Gafford v. Davis, 58 Okla. 303, 159 P. 490; Whitehead Coal Mining Co. v. Schneider, 75 Okla. 175, 183 P. 49; National Bank of Hastings v. Oklahoma State Bank, 80 Okla. 239, 195 P. 768."

The plaintiff, having therefore waived objection to the testimony which conflicts with the judicial proceedings of the county court, I concur in the conclusion reached by the majority.