**Irvin R. ESSARY, Plaintiff in Error,**

**v.**

**Leon E. FITTS, Jr., Defendant in Error.**

**No. 42211.**

Supreme Court of Oklahoma.

March 31, 1970.

.Fred M. Hammer, and Howard K. Berry, Oklahoma City, for plaintiff in error.

Covington, Gibbon & Poe, Richard D. Gibbon, James E. Poe, Tulsa, for defendant in error.

JACKSON, Justice.

Irvin R. Essary, plaintiff, was a guest-passenger in an automobile in Tulsa, Oklahoma, when the vehicle in which he was riding was struck from the rear by a vehicle driven by the defendant, Leon E. Fitts, Jr. After the evidence was presented the trial court instructed the jury to return a verdict for plaintiff for such damages "if any" that plaintiff may be entitled. Plaintiff had sued for $70,000 actual damages and for $25,000 punitive damages. The jury returned a verdict for plaintiff as directed by the court and found that plaintiff had sustained no damages. Plaintiff has appealed and states his single proposition for reversal as follows:

> "The test for the determination of validity in a jury verdict where it is charged that said verdict is inconsistent within itself and invalid, is not in the degree of the proof concerned but in the existence of any substantive evidence on the point concerned. And when, in a suit for damages for personal injuries there is competent proof of pain and suffering, there is no testimony by a qualified witness that no suffering or pain was undergone so as to raise a conflict, and a general verdict is returned for plaintiff which fails to award some damages for pain and suffering, the verdict is inconsistent within itself, and invalid."

Burkett v. Moran (1966), Okl., 410 P.2d 876, and Hallford, et al. v. Schumacher, (1958), Okl., 323 P.2d 989, are cited in support of that proposition.

▪ We think the question for decision is whether defendant's evidence considered in its most favorable light, and the inferences legitimately to be drawn therefrom, support the verdict. Russell v. Davison, 184 Okl. 606, 89 P.2d 352. There is testimony in the case that plaintiff's arthritis was aggravated by reason of the accident and that he sustained pain. There is also testimony by defendant's doctor from which it may be inferred, that plaintiff's arthritis was not aggravated and that he did not sustain damages or pain.

The evidence shows that plaintiff was involved in an automobile accident on Friday afternoon, November 1, at 2:45 P. M. He was X-rayed that evening at the Tinker Field hospital and sent home. A week or two later he saw Dr. H at the Tinker Field Dispensary which was located in the building where he worked. He testified on cross examination that he was on the job at the time of the accident and that the examination at Tinker was for the purpose of recording an incident and accident while working for the Government. He further testified that the treatment which followed was in relation to the recording of the claim or position he was taking in having been in an accident on the job. He saw his Dr. M the first time on February 3, of the following year. Dr. M examined him at that time and recommended that he see Dr. O, an arthritis specialist. Two months later, on April 1, he saw Dr. O. His next visits to Dr. O were on April 14, May 6, July 8, and August 11. He testified he saw no doctor after August 11, 1964, in relation to his arthritic condition. Dr. O was happy that plaintiff's complaints had diminished when he saw him on April 8th.

After the accident plaintiff played golf and continued working in his yard. A movie film was exhibited to the jury which showed him moving dirt from across the street in a wheelbarrow and using it in levelling his front yard. Plaintiff lost no time from his employment and obtained his "grade raises" as they accrued.

Plaintiff's doctors, M and O, in testimony by depositions, were of the opinion that the accident aggravated the arthritic condition causing pain, and that there would be some degree of permanency resulting.

Dr. R, an orthopedic specialist, testified that his field of practice encompassed the problems of arthritis in the spine. He had studied the X-rays that had been made by Dr. M three months after the accident and testified that he could form an opinion as to whether plaintiff's arthritis had been aggravated. He examined plaintiff's "PX 4", a "front view showing the patient's

entire neck, both jaws and upper portions of the dorsal spine, which is the upper back, plus the collarbones", and testified "This X-ray in itself does not show any abnormality of any nature."

He examined plaintiff's "PX 5", "a side or lateral view with the patient's head turned toward your viewing right", and testified "This X-ray is normal in all details except for some arthritic changes on the vertebral bodies. There is no evidence of fracture, dislocation, ruptured intervertebral disc or even any disturbance in the normal curvature of the neck as would be occasioned by any pain producing condition in that area." He further testified that if plaintiff had pain that was causing any problems with his muscles it would be determinable from an examination of the X-ray. "Yes, it would be determinable if there were any acute discomfort that would be dependent upon a condition producing muscle spasm, which would have straightened out the normal cervical curve to a so-called poker spine appearance."

In speaking of the arthritic condition he found exhibited in the X-rays he testified: "If these (above identified X-rays) were taken three months after the date of the accident under consideration, it is a foregone conclusion that that accident was not causative of these. That takes a matter of years to develop."

He testified: "There is no evidence of any permanent aggravation."

He examined plaintiff's "PX 6", a front view showing the lower half of the dorsal spine and the upper portion of the lumbar spine, and stated it revealed no abnormality except arthritic changes, especially in the lumbar region. He testified that the accident had nothing to do with the causation or aggravation of the arthritis. He further testified that if there had been any temporary pain its onset would have occurred with the first 24 hours and reached its zenith within 72 hours following the accident.

This doctor examined plaintiff's exhibits "PX 7 and PX 8" and testified that plaintiff's right hip joint was within normal limits but there was some calcification compatible with chronic arthritis in the left hip joint. He examined plaintiff's "PX 9" (lower spine) and testified that the condition he found there had nothing to do with the accident.

Dr. R was shown a picture of the rear end of the automobile in which plaintiff was riding showing bumper damage and what appears to be about a six inch indentation extending the full width of the door which covers the motor in the rear end of the Volkswagen. He then testified that the impact could have produced an injury only in the neck area. In cross examination he testified that "We can look at an X-ray of a neck and, in a high degree of accuracy, determine the severity of pain." He also testified in cross examination that if the patient complained of pain he would accept what the X-ray showed rather than what the patient says.

The doctors at Tinker Field who examined the plaintiff on the evening of the accident, and subsequent thereto, were not called as witnesses. The X-rays taken by the Tinker doctor on the evening of the accident were not introduced by the plaintiff. In this connection Dr. R testified: "X-rays taken within three days after this accident would have revealed definitely whether or not there had been any acute injury which would have produced this temporary disability." And, if there had been any temporary disability of that nature the highest amount of discomfort would have been the third day after the accident. Plaintiff testified that he was injured on Friday afternoon and returned to work on the following Monday morning.

Plaintiff described his immediately observable injuries as a "little knot" on his head following the accident. On inquiry from his counsel as to whether he noticed the appearance of injury on the night of the accident, such as a bruise or a discoloration?, plaintiff testified: "On my right hip, I believe there was."

From our examination of the record we reach the conclusion that the case was fairly and capably tried. After reviewing the entire record we do not believe a new trial is warranted. Defendant's doctor found no evidence of damage or pain from his examination of the X-rays. He testified that if there had been any pain it would have occurred during the first seventy-two hours following the accident. The evidence further shows plaintiff returned to work on Monday following the accident on Friday. He did not visit his Tinker Field Doctor until a week or two later, and testified that these visits were for the purpose of recording an accident while working for the Government. He continued working at the office and in his yard and continued to play golf. His delay in visiting his doctors from time to time diminished the weight of his testimony regarding pain. Considering the evidence in its entirety and the inferences which the jury could legitimately draw therefrom, we are unable to conclude that the jury's verdict of no injury and no pain is not supported by competent evidence.

The judgment of the trial court is affirmed.

IRWIN, C. J., BERRY, V. C. J. and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in result.