**Kiley NAIL, Appellee,**

v.

**The CITY OF HENRYETTA,**
**Oklahoma, Appellant.**

No. 83404.

Supreme Court of Oklahoma.

Feb. 6, 1996.

915

Thomas H. Stringer, Jr., Henryetta, for Appellee.

Charles D. Neal, Jr., Eric D. Janzen, McAlester, for Appellant.

KAUGER, Vice Chief Justice:

The dispositive question presented is whether Gordon Baldwin, a Henryetta police officer, was acting within the scope of his employment when he shoved Kiley Nail (Nail/appellee) thereby subjecting the City of Henryetta to tort liability under the Governmental Tort Claims Act (the Act), 51 O.S. 1991 § 151 et seq. We find that the question of whether the police officer was acting within the scope of his employment when the appellee was injured is an issue for jury determination.

## FACTS

In May of 1991, Kiley Nail, a fifteen-year-old high school freshman, told his parents that he would be spending the night with a friend. Instead, he attended a prom party held by older high school students at a motel in Henryetta, Oklahoma. After drinking beer and vodka throughout the evening, Nail became extremely intoxicated and ill, and he began to fall in and out of consciousness.

Some of the students drove Nail to the home of a friend's grandmother. Nail mistakenly stumbled onto a porch-like room at the back of a nearby house and began vomit-ing. The homeowner called the Henryetta Police Department and reported that someone was attempting to break into her house. Police Officer Gordon Baldwin accompanied by an off-duty police dispatcher, responded to the call. When the officer arrived, he found Nail vomiting. Officer Baldwin handcuffed Nail's hands behind his back and began to escort him to the police car. The teenager was so intoxicated that he had trouble walking, but he offered little or no resistance to the police officer. On the way to the police car, the officer dragged Nail from the porch and through the yard. After they arrived at the police station, the officer removed Nail from the police car and began leading him to the police station. While Nail was still handcuffed, the police officer said "I'm tired of your s---," and he pushed Nail, which caused him to fall face down onto a gravel/asphalt surface, breaking his nose, and cutting his face and body. Subsequently, the officer denied that he had pushed Nail.

On May 17, 1991, Nail, through his mother, filed notice of a tort claim with the City of Henryetta (City) under the Act. The City failed to respond to the claim, and it was deemed denied by operation of law.[1] On September 5, 1991, Nail's mother sued the City. She alleged that Officer Baldwin either intentionally and maliciously or negligently injured Nail by using excessive force when he arrested him. Thereafter, she filed a motion for partial summary judgment requesting that the court find that the City was liable for Nail's injuries as a matter of law. The City moved for summary judgment, arguing that it was not liable for the officer's actions.[2]

The trial court entered summary judgment for the appellee and against the City, and it set the cause for a jury trial on the issue of damages only. The jury returned a verdict for Nail in the amount of $100,000.00, and

1. See, 51 O.S.1991 § 157 which provides that a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period.

2. The record does not disclose whether the mother sued either the officer individually, or the City by way of a claim under 42 U.S.C. § 1983. However, we note that the City's motion for summary judgment argues that Nail does not have a valid claim under 42 U.S.C. § 1983.

the trial court entered judgment on the jury verdict. The City appealed, and the Court of Appeals reversed and remanded. It found that because the officer was acting outside of the scope of his employment when Nail was injured, the City was immune from liability under the Act. We granted certiorari on October 9, 1995.

**BECAUSE THE QUESTION OF WHETHER THE POLICE OFFICER WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN THE APPELLEE WAS INJURED IS AN ISSUE FOR JURY DETERMINATION, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.**

■ On certiorari, Nail alleges that: 1) under the Act, the City may not escape liability for the police officer's actions because he was performing his usual and normal duties when he injured Nail; and 2) because the parties do not substantially dispute any of the material facts, the City is liable for Nail's injuries as a matter of law. The City insists that the police officer was acting outside the scope of his employment when he injured Nail, and that the City is immune from tort liability under the Act. The City relies on *Parker v. City of Midwest City,* 850 P.2d 1065, 1068 (Okla.1993); and *Holman v. Wheeler,* 677 P.2d 645, 647 (Okla. 1983) for its assertions that: 1) the police officer was acting outside the scope of his employment when he injured Nail; and 2) when a municipality's employee acts outside of the scope of employment, the City is immune from liability.

In *Parker,* this Court addressed the question of whether a municipality may be immunized from liability for a malicious prosecution action under the Act. We recognized that generally: 1) individual employees are immunized from tort liability when they act within the scope of employment;[3] 2) a municipality is not liable for any act or omission of an employee acting outside the scope of employment; and 3) the scope of employment is defined as the "performance of an employee acting in good faith within the duties of office or employment or of tasks lawfully assigned.[4]" We noted that an employee could not be acting within the scope of employment if the employee acted maliciously, or in bad faith. Because a claim for malicious prosecution included elements of bad faith, we held that the municipality was immunized from liability under the Act, and that only the individual police officer could be held liable in tort.

In *Holman* a ten-year-old brought a tort action against a school superintendent, alleging that the superintendent violently and in a fit of intoxicated rage, spanked and beat the child with excessive force. The superintendent countered that: 1) his acts and conduct while he was punishing the child were within the scope of his employment; and 2) because he was acting within the scope of employment, he was immune from individual liability under the Act. The *Holman* Court found that the governmental immunity afforded by the Act does not extend to employees who act in a wilful or wanton manner while performing functions within the scope of employment. Accordingly, because the superintendent acted in a wilful and wanton manner, we held that he was not protected by the Act, and that he could be held individually liable in tort.

Although both *Parker* and *Holman* are helpful, they are not dispositive. The gravamen of the action in *Parker* was for malicious prosecution which necessarily included ele-

---

3. Title 51 O.S.1991 § 163 provides in pertinent part:

"... C. Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual consistent with the pro-

visions of Title 12 of the Oklahoma Statutes...."

4. Title 51 O.S.1991 § 152 provides in pertinent part:

"... 9. 'Scope of employment' means performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud."

ments of bad faith; and in *Holman* the Court found that the superintendent intended to hurt the student by acting in a wilful and wanton manner and intentionally beating the child with a paddle. Here, Nail alternatively alleges that Officer Baldwin either maliciously and intentionally injured him by using excessive force when the police officer arrested him, or that he negligently caused Nail's injuries.[5]

The Governmental Tort Claims Act is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort.[6] Subject only to the Act's specific limitations and exceptions,[7] governmental immunity is waived under the Act and governmental accountability is extended to torts for which a private person would be liable, unless they are committed outside of the course and scope of one's employment or unless they are committed in bad faith or in a malicious manner.[8]

■ Section 152(9) of the Act defines scope of employment as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority." [9] Oklahoma law recognizes the applicability of the doctrine of respondeat superior to the Governmental Tort Claims Act.[10] Under the theory of respondeat superior, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.[11] In *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla.1993) we stated that:

"As a general rule, it is not within the scope of an employee's employment to commit an assault on a third person. However, this general rule does not apply when the act is one which is 'fairly and naturally incident to the business,' and is done 'while the servant was engaged upon the master's business and be done, al-

---

5. The pre-trial conference order characterizes Nail's causes as claims for assault and battery and negligence.

6. *Fuller v. Odom*, 741 P.2d 449, 451–53 (Okla. 1987).

7. Under 51 O.S.1991 § 155, the state or a political subdivision is not liable if a loss results from 30 specified activities of the state, political subdivision or its agent. We note that the exceptions enumerated in § 155 appear inapplicable here and neither party argues that any exceptions enumerated in § 155 apply under the facts presented. Consequently, we do not address the issue. *Peters v. Golden Oil Co.*, 600 P.2d 330, 331 (Okla.1979).

8. Title 51 O.S.1991 § 153 provides:
   "A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
   B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."

See, *Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla.1993); *Holman v. Wheeler*, 677 P.2d 645, 647 (Okla.1983); *Fox v. Oklahoma Memorial Hosp.*, 774 P.2d 459, 461 (Okla.1989). See also, *Orser v. State*, 178 Mont. 126, 582 P.2d 1227, 1231 (1978) (Recognizing that the state is liable for negligence as well as other forms of actionable conduct including intentional torts.); *Dryden v. State Accident Ins. Fund*, 103 Or.App. 76, 796 P.2d 397, 399–400 (1990) (Finding that not every intentional tort by an employee is outside of the scope of employment.); *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla.App. 4 Dist.1987) (Determining that under state tort claims act, similar to Oklahoma's, a governmental entity is liable for all torts, negligent ones and intentional ones alike, unless they are committed outside of the course and scope of one's employment or unless the actor acted in bad faith or with a malicious manner.).

9. Title 51 O.S.1991 § 152(9), see note 4, supra.

10. See, *Ingram v. State*, 786 P.2d 77, 80 (Okla. 1990). This Court recognized that "[t]he Act does not make an actor's governmental employment status a *sine qua non* for subjecting the State to respondeat superior accountability. Any agency relationship between the State and any harm—dealing actors would be as effective as the master/servant status for the creation of the State's vicarious liability in tort."

11. See e.g., *Roring v. Hoggard*, 326 P.2d 812, 814–15 (Okla.1958); *Brayton v. Carter*, 196 Okla. 125, 163 P.2d 960, 962 (Okla.1945); *Retail Merchants Assoc. v. Peterman*, 186 Okla. 560, 99 P.2d 130, 131–132 (Okla.1940).

though mistakenly or ill advised, with ·a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business.' An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." (Citations omitted.)

Clearly, the officer was acting within the scope of his employment when he arrested Nail and took him to jail. Although the officer denied that he shoved Nail during the arrest, the City does not dispute it. However, material fact questions do exist concerning whether the officer's act of pushing Nail was within the scope of his employment. The police officer was not necessarily attempting to hurt Nail when he shoved him or attempting to cause Nail to fall. The officer's comment, when he pushed Nail could be construed as a manifestation of disgust, rather than an intentional attempt physically to harm Nail. The police officer's subsequent denial that he pushed Nail may have been nothing more than an attempt to conceal his unprofessional conduct.

The question of whether an employee has acted within the scope of employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts.[12] Under the facts presented we cannot, as a matter of law, determine whether the officer was acting outside of the scope of employment when he shoved Nail and reasonable minds could differ over whether the officer's action of shoving Nail were within his scope of employment under the Act. Consequently, we find that the question of whether the police officer was acting within the scope of his employment when he shoved Nail is a jury question.

## CONCLUSION

 Although the City does not dispute that the police officer shoved Nail during

Nail's arrest, a question remains as to whether Officer Baldwin was acting maliciously and in a wilful and wanton manner when he pushed Nail, or whether he was merely negligent. Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Summary judgment should be granted only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[13]

## CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; REVERSED AND REMANDED.

ALMA WILSON, C.J., and LAVENDER, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

HODGES and SIMMS, JJ., dissent.

12. See, *Brayton v. Carter*, note 11 supra; *Phillips Petroleum Co. v. Ward*, 181 Okla. 462, 74 P.2d 614, 617 (Okla.1937). See also, Rest.2d Agency § 228 (1958), comment d at 505 which provides:

"The question whether or not the act done is so different from the act authorized that it is not within the scope of the employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury."

13. *Carris v. John R. Thomas & Assoc.*, 896 P.2d 522, 530 (Okla.1995); *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 163 (Okla.1989).