1998 OK 87

**Michael DeCORTE, Plaintiff/Appellee,**

v.

**Gary ROBINSON, Defendant/Appellee,**

**and**

**The City Of Broken Arrow, Oklahoma, Defendant/Appellant.**

**No. 87570.**

Supreme Court of Oklahoma.

Sept. 15, 1998.

Rehearing Denied Dec. 22, 1998.

---

Greg A. Farrar, Farrar & Farrar, P.C., Tulsa, for Appellee Michael DeCorte.

K. Clark Phipps, Galen L. Brittingham, Nelson J. Christiansen, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, for Appellee Gary Robinson.

Michael R. Vanderburg, City Of Broken Arrow, Broken Arrow, for Appellant City of Broken Arrow.

SUMMERS, V.C.J.:

¶ 1  The jury returned a verdict in favor of an injured plaintiff against the City of Broken Arrow for the misconduct of the city's off-duty police officer.  The City ap-

peals. We must determine (1) whether the verdict was irreconcilably inconsistent, (2) whether it was supported by competent evidence, and (3) whether the jury was properly instructed. Upon review we affirm.

¶2 On the day in question off-duty Broken Arrow Policeman Gary Robinson was driving in his private car with his wife in Tulsa. They had been to dinner where, by his own admission, Robinson had two alcoholic drinks (Margaritas). Robinson saw a car which he considered to be driving dangerously, and began to follow it on the Broken Arrow Expressway. There was some controversy whether that car was Plaintiff Michael DeCorte's car, but Robinson at least was eventually following DeCorte's car. In his pursuit Robinson reached speeds of up to 85 miles per hour, sometimes driving on the center median. Robinson contacted the Broken Arrow police department dispatcher, using a cellular telephone, to report what was happening. The only instruction he received was to stay on the phone.

¶3 DeCorte, realizing he was being pursued, stopped his car in a convenience store parking lot in Broken Arrow. Robinson was informed over the cellular phone that an on-duty police officer was almost at the store's location. Robinson nonetheless exited his car and approached the other car, with DeCorte still in it. Robinson identified himself as an off-duty policeman. Although there is also some controversy as to exactly what then ensued, the record indicates Robinson drew a handgun, pointed it at DeCorte and reached into DeCorte's car to get the key. DeCorte was either then pulled from or exited his car on his own.

¶4 After DeCorte was out of his car Robinson attempted to subdue him with a "carotid chokehold." When Officer Smith of the Broken Arrow police department arrived, he and Robinson subdued and handcuffed DeCorte. DeCorte was placed under arrest

and was placed in the back of Officer Smith's police car by Robinson.

¶5 DeCorte testified Robinson then struck him and grabbed him by the throat while DeCorte was handcuffed and seated in the back seat of the police car. Robinson denied this. Robinson was pulled out of the back of the police car by Officer Smith, who testified he could not see if Robinson hit DeCorte. DeCorte's breath test did not reach the statutory level of intoxication. All charges against him were ultimately dropped. During the incident DeCorte suffered a herniated disk in his neck which required surgery. The City terminated Robinson as a result of the incident, citing violation of a number of City's operating polices and procedures.

¶6 DeCorte brought suit against the City of Broken Arrow and Robinson, alleging civil rights violations, false imprisonment, false arrest, and assault and battery. The court directed a verdict in favor of the City as to civil rights violations. As to the other allegations the jury returned a verdict in favor of DeCorte for $30,000.00 against the City.[1] The jury also returned a verdict in favor of DeCorte against Robinson for $3000.00 damages for violation of civil rights and $1000.00 in punitive damages. The jury was asked to determine, in a special finding, whether Robinson was acting in the scope of his employment as a Broken Arrow police officer. The jury answered this question in the affirmative. The City of Broken Arrow appealed. Robinson did not.[2]

¶7 The Court of Civil Appeals reversed the judgment and remanded. It reasoned that the verdict was internally inconsistent, that Robinson could not have been acting within the scope of his employment while at the same time acting in such a wanton manner as to warrant punitive damages. The Court held that because Robinson could only be considered to have been within the scope of his employment if he was acting in good

1. The $30,000 verdict as returned appears to have been against both Robinson and the City. The Journal Entry of Judgment places it only against the City. DeCorte does not complain of the court's treatment of the verdict, nor does the City.

2. Although Robinson did not appeal the judgment against him, he filed a brief on appeal, urging that the judgment rendered against the City be affirmed, and that the jury's finding that he was acting in the scope of employment stand undisturbed.

faith, the award of punitive damages was inconsistent. We have granted certiorari, and now affirm the jury verdict.

¶ 8 The Governmental Tort Claims Acts serves as a waiver of immunity in certain instances. 51 O.S.1991 § 152.1(B). Section 153 states that the state or political subdivision "shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment...." Section 152(9) defines "scope of employment" as "performance by an *employee acting in good faith* within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." (emphasis added)

¶ 9 It is within this context that we must consider whether the jury's verdict was inconsistent. The long-standing rule of this Court is that a verdict will be affirmed if there is any theory, supported by competent evidence, which could serve as the basis for the verdict. *Eversole v. Okla. Hosp. Founders Ass'n*, 1991 OK 80, 818 P.2d 456, 458 (Okla.1991); *Pine Island RV Resort Inc. v. Resort Management Inc.*, 1996 OK 83, 922 P.2d 609 (Okla.1996). Even when the award itself or amount of damages appears inconsistent with a finding of liability, the jury's verdict will be affirmed if there is a theory under which the damages (or lack thereof) could be supported. *Wright v. Central Oklahoma Milk Producers Ass'n*, 1973 OK 15, 509 P.2d 464 (Okla.1973)(verdict affirmed where plaintiff was awarded damages for injury but no damages for pain and suffering because jury could have determined that pain suffered arose from a preexisting condition); *Essary v. Fitts*, 1970 OK 58, 467 P.2d 173 (Okla.1970)(Court upheld a verdict in which the defendant was found responsible for automobile accident but plaintiff was awarded no damages); *Higginbotham v. Hartman*, 1970 OK 25, 465 P.2d 478 (Okla.1970).

¶ 10 As authority for its position the City cites *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065 (Okla.1993). In *Parker* the plaintiff brought suit against the City for malicious prosecution based upon

acts of a policeman. The elements of the cause of action for malicious prosecution include malice; proof of malice is required in order to recover. *Page v. Rose*, 546 P.2d 617, 620 (Okla.1976). Because a city's statutory liability does not extend to acts of its employees committed in bad faith, we held that under the Governmental Tort Claims Act the City could not be held liable for malicious prosecution.

¶ 11 In the later case of *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914, 917 (Okla.1996) we held that the question of whether a police officer was acting in the scope of his employment was a question of fact for the jury when there were conflicting inferences that could be drawn. The City urged that the police officer's conduct of shoving down an individual already arrested was outside the scope of employment, and that the rule of *Parker* applied. We held that it did not. We explained that unlike a situation where the cause of action requires a showing of malice, that case presented a question of fact as to whether the shoving was outside the scope of employment. Although it was clear that the arrest itself was within the scope of employment, it was a question for the jury to decide if the officer's actions later went beyond his scope of employment.

¶ 12 We first look to whether there is evidence to support the jury's special finding that Robinson was acting within the scope of his employment. In *Nail*, we explained "scope of employment":

> Oklahoma law recognizes the applicability of the doctrine of respondeat superior to the Governmental Tort Claims Act. Under the theory of respondeat superior, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.

*Id.* at 917. (footnotes omitted) The Florida Supreme Court further explained this concept as applied in the context of law enforcement in *McGhee v. Volusia County*, 679 So.2d 729 (Fla.1996). The court stated "lia-

bility exists for acts of officers that can be described as abuses of lawful power. The employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess." *Id.* at 733. Finding the officer's conduct within the scope of employment, the court explained "[t]he officer's misconduct, though illegal, clearly was accomplished through a abuse of power lawfully vested in the officer, not an unlawful usurpation of power the officer did not rightfully possess." *Id.* at 732.

¶ 13 Applying this to the present case, there is clearly factual support for the jury's finding that Robinson was acting in the scope of his employment, at least as to the initiation of his pursuit of DeCorte and his placing him under arrest. Robinson stated that he believed DeCorte to be breaking traffic laws. Robinson certainly considered himself, as a law officer, to be acting in the interests of his employer. As such, *Parker v. City of Midwest City, supra,* is not applicable. For the officers' conduct in *Parker* to have been actionable the plaintiff was required to prove that the prosecution itself was motivated by malice. *Page v. Rose, supra.* And since the presence of malice necessarily excludes good faith the plaintiff could not prove that the officer acted within the scope of his employment. Unlike in *Parker*, where the elements of the cause of action itself precluded a finding that the employee was acting in the scope of employment, this case presents adequate legal and factual grounds to support a finding that Robinson was initially within his scope of employment duties. The question then becomes whether the jury's award of punitive damages is inconsistent with this holding.

■ ¶ 14 The pursuit of DeCorte, the stopping of DeCorte and approach by Robinson, the arrest, the choke hold, and the later alleged assault and battery did not happen in a single instance, but took place over a period of time. In *Nail,* we contemplated a situation in which an officer's initial actions were within the scope of employment, but that during the unfolding of events his actions may have gone beyond that scope. *Id.* at 917. Such is the case here. Robinson's initial actions may well have been taken on behalf of his employer, and been within the scope of his duties. However, the jury obviously determined that during the course of events his actions exceeded that scope. While we agree with the City's assertion that an individual cannot simultaneously act in good faith and in a malicious manner, the jury was clearly justified in finding that at some time during the episode Robinson went beyond the bounds of good faith. Thus, the jury's award of punitive damages against Robinson is not necessarily inconsistent with its judgment against the City.

¶ 15 In its brief, the City also asserts error in the jury instructions given by the trial court. The City asserts that the jury was not given instruction as to the City's defense of immunity. We disagree. The trial court instructed, using an instruction almost verbatim to that submitted by the City, that the City could only be held responsible for those acts within the employee's scope of employment. The court continued by defining "scope of employment" in a manner consistent with the statute. Relying on 51 O.S.1991 § 155(4), the trial court instructed the jury that "the state or a political subdivision shall not be liable if a loss or claim results from reasonable enforcement or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." The instructions, taken as a whole, explained in an reasonable manner the law to be applied to the case. *Tansy v. Dacomed Corp.,* 1994 OK 146, 890 P.2d 881 (Okla.1994); *Matter of T.R.W.,* 1985 OK 99, 722 P.2d 1197 (Okla. 1985). There is no indication that the jury was in any way misled by the instructions. The City's theory of the case was adequately presented to the jury in the instructions given by the trial court. We decline to disturb the jury's verdict. *Dutsch v. Sea Ray Boats,* 1992 OK 155, 845 P.2d 187 (Okla.1992).

¶ 16 The Court of Civil Appeals' opinion is vacated. The judgment of the District Court of Tulsa County based upon the jury verdict is affirmed.

¶ 17   KAUGER, C.J., and HODGES, LAVENDER, OPALA and WATT, JJ., concur.

¶ 18   ALMA WILSON, J., concurs in part, dissents in part.

¶ 19   SIMMS and HARGRAVE, JJ., dissent.

