C. Coit MOCK, First National Bank of Wichita Falls in Wichita Falls, Texas, a national banking corporation, Harvey Gerald Hart, Helen Juanita Hart, Patsy Ruth Hart and Glen Ray Hart, Plaintiffs in Error,

v.

W. F. STRICKLIN, as Guardian of the Estate of Lela Pearl Hart, an insane and incompetent person, Defendant in Error.

No. 37067.

Supreme Court of Oklahoma.

April 16, 1957.

Rehearing Denied Sept. 10, 1957.

William J. Williams, Ardmore, guardian ad litem for Hart Minors.

C. Coit Mock, Wichita Falls, Texas, Otey, Johnson & Evans, Ardmore, for plaintiffs in error.

George & George, Ernest W. Tate, Ardmore, for defendant in error.

DAVISON, Justice.

This is a suit, brought in the District Court of Carter County, Oklahoma by W. F. Stricklin, Guardian of the Estate of Lela Pearl Hart, an incompetent, against her son and daughter, Henry Houston Hart and Maudie Hart Wheat, and their children, Harvey Gerald Hart, Helen Juanita Hart, Patsy Ruth Hart, Glen Ray Hart, Flodene Wheat McWorther, Donald E. Wheat, Kenneth E. Wheat, and Doris E. Wheat Felts, and against C. Coit Mock and First National Bank of Wichita Falls, Texas, whereby said plaintiff sought to cancel a certain trust agreement in so far as it affected lands in said county. The parties will be referred to as they appeared in the trial court.

Lela Pearl Hart and her son and daughter, above named, were residing in Wichita Falls, Texas, when, on April 7, 1952, she executed a certain trust agreement whereby she appointed the defendant, Mock, as trustee to manage all of her property, both real and personal, for the successive benefit of herself, her two children and her eight grandchildren. The trust conveyance did not specifically describe any certain property but was of "all properties that I now own, whether real or personal, or mixed, of every kind and character, where*ever* situated, and agree to grant, bargain, sell, assign and convey in trust all properties which I may later acquire * * *". By the terms of the agreement, the trustee was given complete authority over the property, to deal with it as he saw fit, to withhold the trust assets or to distribute the same to any or all of the beneficiaries, equally or unequally, as he saw fit, to appoint a successor trustee who should have no power to inquire into the previous management of the estate. The trust was made irrevocable and to exist throughout the life or lives of each and all of the beneficiaries.

At the time of execution of the trust agreement, Lela Pearl Hart's property consisted of a one ninth undivided interest in approximately 640 acres of land in said Carter County, Oklahoma, which she had inherited from her father and on which there were three producing oil wells, cash in the approximate amount of $7,000 held by her brother for her, and a small house in Wichita Falls, Texas of about $800 in value. At the time of the trial of the case at bar, there were some forty five producing oil wells on the land.

On June 26, 1954, the County Court of Carter County, Oklahoma, appointed the plaintiff herein as guardian of the estate of the said Lela Pearl Hart and, on July 7, thereafter, this suit was instituted by him, seeking the cancellation of the trust agreement as to the lands in said Carter County and the quieting of the title of the said Lela Pearl Hart thereto. Trial of the issues to the court resulted in a decree and judgment for plaintiff from which this appeal was taken by the children of Henry Houston Hart, the trustee, C. Coit Mock, and the successor trustee, First National Bank of Wichita Falls.

█ The first questions with which we are confronted relate to jurisdiction. It is contended that the plaintiff was not authorized to bring this suit, because the

County Court of Carter County did not have jurisdiction to appoint a guardian for the estate of the said Lela Pearl Hart, a resident of the State of Texas unless her incompetency had been previously determined by a proper tribunal of the state of her residence. Regardless of the merit, if any, in that contention, it is not properly before us for determination in this suit. The authority of the County Court, to appoint a guardian of a non-resident minor's or incompetent's estate, is defined by 58 O.S.1951, § 861 and 30 O.S.1951 § 9. By attacking the validity of the order appointing the guardian, in this lawsuit, the attack is collateral and, as was held, in the case of Powers v. Brown, 122 Okl. 40, 252 P. 27,

> "The county court of Latimer county in guardianship proceedings having found the necessary jurisdictional facts and having issued letters of guardianship, such guardianship proceedings are not subject to a collateral attack unless the proceedings are void upon their face."

◼ In the case now before us, the order of the county court appointing the guardian contained a finding that Lela Pearl Hart was "a person of unsound mind and mentally incompetent to manage her property and estate." What evidence constituted the foundation of that finding of fact cannot be collaterally inquired into in this action. In the early case of Lowery v. Parton, 65 Okl. 232, 165 P. 164, 165, the primary issue was the validity of a guardian's oil and gas lease. The authority of the county court to appoint the guardian was attacked upon the ground that the purported minor had reached the age of majority before the appointment. We said therein that "The order having recited the fact that Choctaw Lowery was a minor, that the necessity existed for the appointment of a guardian, and that W. C. Daniels possessed the qualifications necessary for a guardian, and that an application had been filed asking for such appointment, we think renders the order good as against collateral attack." The

same reasoning is applicable to the situation now under consideration.

◼◼ The next proposition goes to the jurisdiction of the trial court to render a personal judgment against the defendant C. Coit Mock. Mock was served by publication. The original petition of plaintiff contained a prayer solely for judgment in rem. Mock filed a general motion to quash service, then a general demurrer and, finally, an answer. In each of the two last mentioned pleadings, he objected to the jurisdiction of the court over his person. Subsequently, plaintiff filed, with permission of the court, an amended petition wherein a personal judgment was sought against Mock, who, thereafter and with permission of the Court also, refiled his answer. However, no affirmative relief, in any form, was sought therein. Plaintiff contends that the motion to quash did not raise the jurisdictional question and that the filing of the demurrer and answer had the effect of entering defendant's general appearance and waiving the question of jurisdiction. To support that argument the case of Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1, is cited. "But a reading of the language used by the court in that case convinces us that the question could be properly raised by answer only if that were the first pleading filed * * *". Summers v. Williams, 206 Okl. 164, 242 P.2d 139, 141. In the case at bar, every pleading, filed by defendant, raised the question of jurisdiction of the court over his person. We see no reason why filing the motion to quash changes the rule although it did not properly raise said question. A close examination of the cited cases and others on the same point leads to the conclusion that the rule established in this jurisdiction would be more clearly expressed by putting in the following language: An objection, by a defendant to the jurisdiction of the trial court over his person, may be raised and preserved by a special plea thereto or by objection included in the first pleading, filed by him which would otherwise be a general appearance in defense. This the defendant Mock did in the case at bar. Therefore, any judgment

**251**

against him in personam was erroneous. Wilkinson v. Whitworth, 169 Okl. 286, 36 P.2d 932.

■ The defendant bank, although a foreign corporation, did not stand in the same position as Mock, having entered its general appearance without objection to the jurisdiction over its person. However, the jurisdiction of the court over the subject matter extended only to the realty in Carter County, Oklahoma, and the income received by the trustee therefrom. The judgment should not have gone beyond the trial courts' jurisdictional bounds. As to any property outside the county of the forum, the judgment would be ineffective and beyond those bounds, unless, under certain conditions, it could effect other property within the state of the forum, which proposition is not here involved and need not be dealt with. Specifically, the judgment in the instant case could not be operative upon the title to property in the State of Texas. It was erroneous in so far as it purportedly adjudicated the rights of the parties in such property. Weber v. Bruce, 198 Okl. 106, 175 P.2d 800.

Those defendants who are appellants here, also assert that the evidence is insufficient to support the findings of the trial court to the effect that,

"That on the 7th day of April, 1952, and prior and subsequent thereto, Lela Pearl Hart was a person of unsound mind, but not entirely without understanding.

"That on the 7th day of April, 1952, and prior and subsequent thereto, Lela Pearl Hart was incapable from want of mental capacity to understand the nature, effect or import of the trust agreement executed by her on that date; that she was likewise incapable of measuring its extent, importance or reasonableness; that she was likewise incapable of understanding the extent of value of the aforesaid real property owned by her on that date; that she was likewise incapable of understanding that by the execution of such trust

agreement she was purporting to divest herself of legal title or beneficial interest in her said property."

The quoted findings, if sustainable, bring the case squarely within the purview of 15 O.S.1951 § 23 which provides as follows:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to recission without prejudice to the rights of third persons, as provided in the article on extinction of contracts."

■ Numerous witnesses testified relative to the mental capacity of Mrs. Hart. Some were acquaintances, some were members of her family. Some were physicians, some laymen. The testimony covered a period of some fifty years. Some of the witnesses fixed her mental capacity as comparable to that of a five to eight year old child. One of the expert witnesses rated her as being in a "low moron group." Some witnesses testified to certain instances and happenings which would indicate that she had sufficient capacity as to make her competent to execute conveyances. All of this testimony was before the trial court. In the case of Graff v. Holliday, 172 Okl. 503, 45 P.2d 1065, 1066, it was held that,

"Where the mental incapacity of a grantor is a material issue in an action to cancel a conveyance for incompetency, evidence as to his weakness of mind is not confined to the date of the conveyance, but may go to any period of his life, prior and subsequent to the conveyance."

And, in the case of Oklahoma Natural Gas Corp. v. Lay, 175 Okl. 75, 51 P.2d 580, it was held that,

"The contract of a person of unsound mind, but not entirely without understanding, made before her capacity has been judicially determined, is subject to recission without prejudice to rights of third persons, as provided in the article on extinction of contracts."

■ In the more recent case of Marten v. Wagner, 198 Okl. 273, 178 P.2d 618, 619, it was held that,

"Where the unsoundness of mind of the grantor is so great that he cannot understand the nature and effect of the execution of a conveyance, although the grantor is not entirely without understanding and his incapacity has not been previously judicially determined, he or his guardian subsequently appointed may, as authorized by 15 O.S.1941 § 23, rescind by complying with 15 O.S.1941 § 235, and such conveyance may be cancelled without proving inadequacy of consideration, fraud, menace, duress, undue influence of mistake, where he can do so without prejudice to the rights of third persons."

■ To determine the sufficiency of the evidence to support the judgment of the trial court in the invocation of the rules above quoted the same yardstick is used as in cases of equitable cognizance generally.

"In an equitable action, the presumption is in favor of the correctness of the judgment of the trial court and such judgment will not be set aside unless found to be against the clear weight of the evidence." Fessler v. Fariss, Okl., 304 P.2d 332, 333.

■ The defendants also complain of the action of the trial court in refusing to appoint a physician to examine Mrs. Hart. They assert that there was an agreement between counsel for the parties that defendants might have Mrs. Hart examined by a physician of their choice but that, when the defendants requested such examination during the trial, permission was refused. The cause was being tried before an assigned judge who refused to appoint a physician for such examination because he did not know the local doctors. The decision was one resting within the sound legal discretion of the trial court, Oklahoma Transportation Co. v. Stine, Okl., 280 P.2d 1020, and no abuse of that discretion appears from the record.

We see no merit in the further contention that there was inequitable conduct on the part of the defendants, Henry Houston Hart and Maudie Hart Wheat, by assisting their mother in obtaining the relief she here seeks. It is true that the children of said defendants might, by the judgment herein, be deprived of an interest in Mrs. Hart's property. But such interest was only theoretical, having been conveyed to them by an instrument which Mrs. Hart did not have the mental capacity to execute.

■ We, therefore, conclude that the trial court had jurisdiction to cancel the trust agreement in so far as the lands in Carter County were concerned; to render judgment for an accounting by the First National Bank of Wichita Falls of all income received by it from said lands; but not to render judgment in any form against the defendant Mock except as to the title to said lands.

Judgment affirmed in part and reversed in part and the cause remanded with directions to enter judgment in conformity with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and JOHNSON, WILLIAMS and JACKSON, JJ., concur.

HALLEY and BLACKBIRD, JJ., dissent.