1998 OK 112

William GROSECLOSE, Plaintiff,

v.

CITY OF TULSA, Defendant/Appellant,

v.

Steve Slaughter, Defendant/Appellee.

No. 88,084.

Supreme Court of Oklahoma.

Nov. 10, 1998.

As Corrected Nov. 18, 1998.

Rehearing Denied Oct. 19, 1999.

John E. Dorman, Larry Simmons, City Attorney's Office, Tulsa, Oklahoma, for Appellant.

Roger A. Long and Joe M. Fears, BARBER & BARTZ, Tulsa, Oklahoma, for Appellee.

HARGRAVE, J.

¶ 1 The issue is whether the trial court erred in awarding Defendant/Appellee Steve Slaughter indemnification from the City of Tulsa for attorney fees and costs expended in defending an action in which it was alleged that he committed assault and battery on the plaintiff while acting within the scope of his employment as a Tulsa police officer. We find that the trial court did not err in allowing indemnification.

¶ 2 Defendant Slaughter was off duty and had just attended church services when he confronted Plaintiff Groseclose and two associates while they were removing items from a warehouse leased by a church ministry. Plaintiff refused to identify himself or reveal his authority for being on the premises. Slaughter left to call the Tulsa police but, before they arrived, Slaughter and Plaintiff had a physical altercation. Groseclose sued the City of Tulsa and the two church entities. Plaintiff filed an amended petition adding Slaughter as a defendant and later dismissed the churches with prejudice. Plaintiff sued the City of Tulsa (City) for negligence based on Slaughter's actions and sued Slaughter for assault and battery and intentional infliction of emotional distress. Plaintiff alleged that Slaughter was *acting within the scope of his employment* when the acts were committed.

¶ 3 Slaughter filed a written request for legal representation from the City of Tulsa pursuant to 11 O.S. § 23–101, but City denied the request.[1] Slaughter then hired his own counsel. After jury trial, the jury returned verdicts in favor of the City of Tulsa and Steve Slaughter and the trial court entered judgment for City and Slaughter. Slaughter then filed an application in the trial court seeking indemnification of his attorney fees and costs from City under the

Governmental Tort Claims Act, 51 O.S. Supp. 1992 § 162.

¶ 4 After a hearing, the trial judge found that Slaughter was entitled to indemnification for attorney fees and costs expended in his defense, pursuant to 51 O.S. § 162 and ordered the City to indemnify Slaughter for his attorney fees in the amount of $5,080.25 and costs in the amount of $1,094.05. The City filed a motion to reconsider and the trial court denied the motion. The City of Tulsa appealed the order allowing indemnification and the Court of Civil Appeals, Division I, affirmed. We granted certiorari.

¶ 5 City's brief on appeal alleges that the requirements of 51 O.S. § 162(B) were not met in that: 1 Slaughter did not produce evidence sufficient to support a finding that he was entitled to indemnification under 51 O.S. § 162(B)(4) and, 2) the trial court should have conducted a full evidentiary hearing before granting the application for indemnification under § 162(B)(2).

¶ 6 Defendant Slaughter asserted that he was not required to comply with § 162(B) because he was entitled to indemnification as a matter of law under Title 51 O.S. § 162(A)(1) because the plaintiff had *alleged* that Slaughter was acting within the scope of his employment. Section 162(A)(1) of the Governmental Tort Claims Act requires the state or political subdivision to provide a defense to an employee charged with a violation of property rights or civil rights where it is alleged that the employee is acting within the scope of employment. Title 51 O.S. Supp.1992 § 162(A)(1) provides:

"A. The state or any political subdivision, subject to procedural requirements imposed by this section, or other applicable statute, ordinance, resolution or written policy, shall:

1. Provide a defense for any employee ... *when liability is sought for violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States when alleged to have been committed by the employee while acting within the scope of employment.* (emphasis added).

---

1. Text of statute appears at page 830.

¶ 7 Slaughter argues that the City was obligated to provide a defense for him under § 162(A) because it was alleged that he was acting within the scope of his employment. City argues that it was not obligated to defend Slaughter under § 162(A) because no violation of property rights nor any rights, privileges or immunities secured by the Constitution or laws of the United States were alleged.

¶ 8 City is correct that title 51 O.S. § 162(A) does not apply in this case because liability was not sought for any alleged violation of plaintiff's civil rights. The plaintiff sued under state law theories of negligence, assault and battery, and intentional infliction of emotional distress. No liability was sought for violation of any "property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States." Previous versions of § 162 required that the employee have violated the civil rights laws of the United States; prior to the 1979 amendment which rewrote the section, § 162(A) read:

"If an employee is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of his employment *which violates the civil rights laws of the United States*, and the act or omission was in good faith, ... the political subdivision shall, subject to procedure requirements imposed by statute, ordinance, resolution or written policy, pay or cause to be paid any judgment or settlement of the claim or suit. The political subdivision shall also pay or cause to be paid all costs and fees incurred by or on behalf of an employee in defense of the claim or suit." (emphasis added)

¶ 9 The amendment to § 162(A) changed the language "which violates the civil rights laws of the United States" to "when liability is sought for any violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States." The meaning of the statute was not changed. Although Slaughter attempts to argue on certiorari that the allegations against him could be considered violations of civil rights law, this argument is without merit, and Slaughter's primary assertion that § 162(A) applies in any action in which it is *alleged* that an employee acted within the scope of employment must fail. By its own terms § 162(A)(1) applies only where there are allegations of violations of property rights or rights secured by the Constitution or laws of the United States.

¶ 10 The statutory authority for indemnification of municipal employees is found at Title 11 O.S. Supp.1992 § 23–101. Subsection(C) provides for indemnification pursuant to the Governmental Tort Claims Act. Section § 23–101 provides:

"A. Unless otherwise provided for in the Governmental Tort Claims Act, if an action is brought against a municipal employee in any civil action or special proceeding in the courts of this state or of the United States by reason of any act done or omitted in good faith in the course of employment, the governing body of the municipality shall direct the municipal attorney or other designated legal counsel to appear and defend the action or proceeding on the behalf of the employee in accordance with the provisions of Section 23–102 of this title. The municipal governing body shall not designate an attorney to represent a municipal employee if that employee did not perform a statutorily required duty and such duty is the basis of the civil action or special proceeding."

B. The municipal governing body may direct its attorney to intervene in any action or proceeding and to appear on behalf of the municipality or any of its officers or employees if the governing body deems the municipality to have an interest in the subject matter of the litigation.

C. A municipality may indemnify its employees for actual damages, fees and costs *in accordance with the Governmental Tort Claims Act.*" (emphasis added)

¶ 11 Subsections A and B of § 23–101 provide authority for defense of a municipal employee in a civil action or special proceeding not otherwise provided for in the Governmental Tort Claims Act. Section 23–102 of Title 11 sets forth the procedure by which an employee can seek representation from the City and by which the City determines

whether it is required to provide a defense to an employee.[2] Similar procedures for representation of county and state employees are found at Title 19 O.S. Supp.1992 § 215.25 and Title 74 O.S. Supp.1992 § 20(f). If the City determines that the employee was not acting within the scope of employment, it is not required to provide a defense. In this case, the City has always maintained that Slaughter was not acting within the scope of his employment as a police officer, and when Slaughter initially sought representation by City, the request was denied on that basis.

¶ 12 We have said that a municipal employee is entitled to indemnification of attorney fees under § 23–101 even if the plaintiffs were unable to comply with the § 23–102 procedure. In *McCormack v. Town of Granite*, 913 P.2d 278 (Okla.1995), the Board of Trustees of the Town of Granite fired the police chief and were sued in federal court for violation of police chief's civil rights. Also, a grand jury was empaneled and returned an indictment for ouster of the board of trustees, based on the firing incident. A federal judge dismissed the civil rights suit and the district judge dismissed the state court ouster action. Trustees sued the Town of Granite for their legal costs in defending the two actions. The trial court granted summary judgment to trustees for attorney fees in defending the federal case, but denied the claim for fees in defense of the grand jury ouster proceeding. We held that the grand jury ouster proceeding was a "special proceeding in the courts of this state or the United States" within the meaning of Title 11 O.S. § 23–101, which permits attorneys fees to be paid for municipal employees defending themselves in a civil action or special pro-

ceeding under certain circumstances. Where the Board of Trustees would have had to rule on their own application for representation from the Town of Granite under the 11 O.S. § 23–102 procedure, we held that it was not necessary that they do so before being entitled to recover their attorney fees expended in defense of the grand jury ouster proceeding. In the case at bar, Slaughter initially sought representation under § 23–102 and the City denied the application.

¶ 13 Title 11 O.S. Supp.1992 § 23–101(C) was added to Section 23–101 by Laws 1992, c. 371 § 3, effective July 1, 1992, to provide for indemnification of a municipal employee *pursuant to the Governmental Tort Claims Act.* The exclusive procedure for obtaining indemnification from a political subdivision is set out in the Governmental Tort Claims Act at 51 O.S. Supp.1992 § 162(B).

¶ 14 Title 51 O.S. Supp.1992 § 162(B) provides, in pertinent part:

"1. The state or a political subdivision shall not be required to indemnify any employee ... under the provisions of this section, unless the employee is judicially determined to be entitled to such indemnification and a final judgment therefor is entered.... *The exclusive means of recovering indemnification from a political subdivision shall be by filing an application for indemnification in the trial court where the judgment was entered....* Actions to determine entitlement to indemnification shall be tried to the court, sitting without a jury.

* * *

3. All applications for indemnification from the state or a political subdivision

---

2. 11 O.S.1991 § 23–102 **Defense of municipal employees—Procedure for Request and Defense** provides, in pertinent part:

If a municipality is to defend a municipal employee in a civil action or special proceeding as provided for in Section 23–101 of this title, the following procedure shall apply:

1. The employee shall make a written request to the governing body of the municipality within ten (10) days after service of summons ...

2. Before any defense is initiated, an inquiry shall be made by the municipal governing body of the facts upon which the action or special proceeding is based. Unless the gov-

erning body determines that the employee was acting in good faith and in the course of his employment, representation shall not be provided pursuant to the provisions of Section 23–101 of this title;

3. Upon the decision of the municipal governing body to provide representation for the employee, it shall direct an attorney to appear and defend the action ...

* * * *

7. Any officer or employee who acts outside the scope of his official authority shall be liable for damages in the same manner as any private citizen.

shall be filed in the name of the real party or parties in interest. . . . The employee of the state or a political subdivision must file an application for indemnification within thirty (30) days of final judgment, or the right to seek indemnification shall be lost forever.

4. In order to recover indemnification from the state or a political subdivision pursuant to this subsection, the court shall determine by a preponderance of the evidence that:

a. the employee reasonably cooperated in good faith in the defense of the action upon which the judgment or settlement was awarded and for which indemnification is sought;

b. the actions or omission upon which such a judgment or settlement has been rendered were not the result of fraudulent conduct or corruption by the employee;

c. the employee, in committing the acts or omissions upon which a judgment or settlement has been rendered was acting in good faith and within any applicable written administrative policies known to the employees at the time of the omissions or acts alleged.

d. the employee was acting within the scope of employment at the time that the acts or omission upon which a judgment or settlement has been rendered were committed by the employee;

e. the acts or omissions of the employee upon which a judgment or settlement has been rendered were not motivated by invidious discriminatory animus directed toward race, sex, or national origin; and

f. when punitive or exemplary damages are included in the total award rendered against the employee of a political subdivision, the indemnification amount sought for fees and costs does not include amounts attributable to the employee's defense against the punitive or exemplary damages in accordance with paragraph D of this section.

C. The state or political subdivision shall have the right to recover from an employee the amount expended by the state or political subdivision to provide a defense . . . or pay the final judgment, if it is shown that the employee's conduct which gave rise to the action was fraudulent or corrupt or if the employee fails to reasonably cooperate in good faith in defense of the action.

D. . . . *It is the public policy of the State of Oklahoma that the state or a political subdivision may indemnify its employee for actual damages, fees, and costs as provided herein in any case in which the findings set out in paragraph B of this section have been determined.* (emphasis added)

\* \* \*

¶ 15 City argues that the trial judge erred in not conducting a new evidentiary hearing on Slaughter's application for indemnification of attorney fees and costs. Section 162(B)(4) requires the trial judge to find by a preponderance of the evidence that the grounds for indemnification have been met. Here, City complains, the trial judge did not conduct an evidentiary hearing, but instead relied on evidence from the trial.

¶ 16 The record before us does not include a transcript of the hearing on Slaughter's application for indemnification. The trial judge's order allowing indemnification recites that the determination was made after a hearing, based upon argument of counsel and evidence presented at the trial on the merits. The trial judge's order recites:

"After considering the argument of counsel and *based solely upon the evidence admitted during the jury trial held herein* . . . the Court finds that Slaughter is entitled to indemnification for attorney's fees and costs expended in his defense pursuant to 51 O.S.1991 § 162." (emphasis added)

¶ 17 Section 162(B)(1) of the Governmental Tort Claims Act requires that there must be a judicial determination of the employee's right to such indemnification and that such action shall be tried to the court sitting without a jury. In order to recover indemnification from the state or a political subdivision under § 162(B)(4), the court must make a determination, by a preponderance of the evidence, of the six factors listed in a)—f), *supra,* one of which is that the employee was acting within the scope of employment at the

time that the acts or omissions upon which a judgment or settlement has been rendered were committed. Subsection (B)(4)(e).

¶ 18 Because the Governmental Tort Claims Act provides that the exclusive means of recovering indemnification from a political subdivision shall be by filing an application for indemnification *in the trial court where judgment was entered,* coupled with the provision that such actions shall be tried to the court sitting without a jury, we interpret the intent of the statute to be that the trial judge who conducted the trial in which judgment was entered may rely on evidence from the trial in making the § 162(B)(4) findings. There is no requirement that an entirely new evidentiary hearing must be conducted. Here, the trial judge who had presided over the trial in which the judgment was entered was also the judge who heard the application for indemnification. City's argument that the trial judge's finding that Slaughter was acting within the scope of his employment is not supported by the evidence must fail. The statute makes the trial judge the finder of fact as to the elements set out in § 162(B)(4). In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the finding is against the clear weight of the evidence. *Mock v. Stricklin,* 315 P.2d 247 (Okla.1957).

¶ 19 City's primary argument is that Slaughter was aware of Tulsa Police Department Regulation 20 which governs off duty action by police officers and thus was not acting within established procedure. Regulation 20 provides:

"Off-duty officers are not authorized to take *police* action except in circumstances where human life is in imminent danger, or as otherwise authorized by the Policies and Procedures of the Tulsa Police Department. Such action shall be limited to the reasonable capability of the officer to take police action.... In all other cases, officers shall notify the Police Department, and any necessary action shall be taken by on duty police officers." (emphasis original)

¶ 20 City argues that because Title 51 O.S.1991 § 162(B)(4)(c) requires a determination that the employee was acting in good faith and within any applicable written administrative policies known to the employee at the time of the omissions or acts alleged, the trial judge cannot have found that § 162(B)(4)(c) was met by a preponderance of the evidence because Slaughter testified that he was aware of TPD Rule 20.

¶ 21 Officer Slaughter testified, however, that when he encountered what appeared to be a burglary in process, he considered himself on-duty. He previously had been the investigating officer at a burglary at the church storage facility. Slaughter questioned plaintiff and the other two men about their presence and, had they stated their business, would have confirmed their right to be on the premises. Slaughter followed procedure by calling in a report to the police. He testified that he told the men that he was a police officer after he returned from calling the police. He testified that the plaintiff approached him and attempted to get into the pickup truck by which Officer Slaughter was standing, and reached for Officer Slaughter. At that point, Officer Slaughter grabbed plaintiff by the wrists and pushed him up against a wall and held him there until police arrived. There were two other men present in the storage building and Officer Slaughter at one point had to show his gun and warn one of the men to "freeze." There was testimony that the plaintiff was uncooperative and belligerent. Based upon the testimony the trial judge could have found that Office Slaughter was acting according to procedure and within the scope of his employment. The trial court is the trier of fact and its findings in this action of equitable cognizance is not against the clear weight of the evidence. *Mock v. Stricklin, supra.*

¶ 22 Accordingly, we find that the trial court did not err in its determination that defendant Slaughter was entitled to indemnification of costs and attorney fees from the City of Tulsa. Certiorari having been granted previously, we vacate the opinion of the Court of Civil Appeals and affirm the trial court's order.

CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; TRIAL COURT AFFIRMED.

¶ 23 CONCUR: SUMMERS, V.C.J., HODGES, SIMMS, HARGRAVE, ALMA WILSON, JJ.

¶ 24 DISSENT: KAUGER, C.J. (by separate opinion), LAVENDER (joins Kauger, C.J.), OPALA (joins Kauger, C.J.), and WATT (joins Kauger, C.J.), JJ.

¶ 1 KAUGER, C.J., dissenting with whom LAVENDER, OPALA, WATT, JJ.; join:

¶ 2 Pursuant to Rule 1.179, Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1,[1] a petition for certiorari must be filed within twenty days of the date of a Court of Civil Appeals order denying rehearing. A certiorari petition is timely only when it has met the time requirements imposed and when the party filing the petition has remitted costs.[2] Rule 1.179 provides that the time to file a petition for certiorari "shall not be extended." [3]

¶ 3 The Court of Civil Appeals issued an order denying rehearing on March 11, 1998.

Under Rule 1.179, the defendant/appellant, City of Tulsa [City], had twenty days—or until March 31, 1998 to file a petition for certiorari **along with the required costs.**[4] The City met the physical requirements for mailing imposed by Rule 1.4(c), Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1.[5] On March 31, 1998, the petition was sent certified mail, return receipt requested to the Clerk of the Supreme Court. However, Rule 1.4(c),[6] like its counterpart, Rule 1.179,[7] requires that costs be included with the petition before the it may be filed. Costs were not paid until April 2, 1998—two days out of time.[8] Therefore, because the petition for certiorari was not timely filed, the Court was without jurisdiction to reach the merits of the cause.

---

1. Rule 1.179, Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1, provides in pertinent part:

   "... **(e) Time to File Petition.** When no party seeks rehearing in the Court of Civil Appeals a petition will be deemed timely if filed with the clerk of the Supreme Court within twenty (20) days of the date the opinion was filed by the Court of Civil Appeals. When a party sought rehearing a petition for certiorari will be deemed timely if filed with the clerk of the Supreme Court within twenty (20) days of the date the order of the Court of Civil Appeals is filed that has denied all timely filed rehearing petitions. The time to file petition for certiorari shall not be extended. A petition for certiorari will be deemed filed when mailed if it complies with Rule l.4(c) and (e).... **(H) Costs.** An application for certiorari shall be timely filed when the requirements of Rule l.179 are met and when a party filing a petition for certiorari remits to the Clerk of the Supreme Court the cost of deposit provided by statute...."

2. Id.; Rule 1.14(c), Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 5, infra.

3. Id. Use of "shall" is normally considered a mandate equivalent to the term "must," requiring interpretation as a command. *United States of America acting through the Farmers Home Admin. v. Hobbs*, 1996 OK 77, 921 P.2d 338, 342; *Heirshberg v. Slater*, 1992 OK 84, 833 P.2d 269, 275; *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, 452.

4. Rule 1.179, Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 1, supra.

5. Rule 1.14(c), Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1, provides in pertinent part:

   "(c) **Petition in error, Petition for Review an Order of the Workers Compensation Court, Petition for Certiorari to the Court of Civil Appeals, and Mailing.** A petition in error in an appeal brought pursuant to 12 O.S. Supp. 1995 § 990A may be filed either by delivery to the Clerk of the Supreme Court or by sending it by U.S. certified mail with return receipt requested to the Clerk of the Supreme Court, Room B–2, State Capitol Bldg., 2300 N. Lincoln, Oklahoma City, OK, 73105, or Clerk of the Supreme Court, P.O. Box 53126, Oklahoma City, OK 73152.... Where a petition in error is mailed following the requirements of this rule, the petition in error shall not be filed unless the full amount of the required cost deposit for filing of the petition in error has also been mailed, conforming to the same mailing requirements, or such cost deposit is actually received by the Court Clerk."

6. Id.

7. Rule l.179, Rules of the Supreme Court, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 1, supra.

8. The date stamped on the Petition for Writ of Certiorari is "April 2, 1998" the date costs were received from the City.