286 F.3d 1206
 Robert LAMPKIN, Plaintiff-Appellant/Cross-Appellee,
v.
Jim LITTLE, individually and as a commissioned officer of Okmulgee County, Defendant-Appellee/Cross-Appellant, and
Okmulgee County Board of Commissioners, State of Oklahoma a/k/a Board of County Commissioners of Okmulgee County, Oklahoma, Defendant-Appellee.
Robert Lampkin, Plaintiff-Appellee/Cross-Appellant,
v.
Jim Little, individually and as a commissioned officer of Okmulgee County, Defendant-Appellant/Cross-Appellee, and
Okmulgee County Board of Commissioners, State of Oklahoma a/k/a Board of County Commissioners of Okmulgee County, Oklahoma, Defendant-Appellee.
 No. 01-7018.
 No. 01-7019.
 United States Court of Appeals, Tenth Circuit.
 April 16, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Submitted on the briefs:*
 Carol Seacat of Seacat & Seacat, Okmulgee, OK, for Appellant/Cross-Appellee and Appellee/Cross-Appellant Robert Lampkin.
 L. Susan Work and Kevin Dellinger, Muscogee (Creek) Nation, Okmulgee, OK, for Appellee/Cross-Appellant and Appellant/Cross-Appellee Jim Little.
 Chris J. Collins and Michael L. Carr of Collins, Zorn, Wagner & Gibbs, P.C., Oklahoma City, OK, for Appellee Okmulgee County Board of Commissioners.
 Before TACHA, Chief Judge, ANDERSON, and MURPHY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 A jury found Defendant Officer Jim Little liable in his individual capacity to Plaintiff Robert Lampkin for the use of excessive force during an arrest of Lampkin. Little applied for an order that the Board of County Commissioners of Okmulgee County ("County") indemnify him and pay the judgment to Lampkin, pursuant to the Oklahoma Governmental Tort Claims Act. Okla. Stat. tit. 51, § 162. The district court denied Little's application, and Lampkin and Little both appealed this determination. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and VACATE and REMAND.
 
 
 I. Background
 
 
 2
 Robert Lampkin filed an action under 42 U.S.C. § 1983 against Jim Little and the County.[1] Lampkin claimed that Little, a police officer for the Muscogee (Creek) Nation who also held a commission from the Okmulgee County Sheriff's Office, violated Lampkin's civil rights by using excessive force against him during a traffic stop and arrest. Lampkin also claimed that the County had failed to provide adequate training and supervision.[2] The court dismissed the claim against Little in his official capacity and the claim against the County. A jury returned a verdict against Little in his individual capacity. Little then filed an application for an order requiring indemnification from the County pursuant to title 51, section 162 of the Oklahoma Statutes. The district court denied this application, holding that several of the statutory requirements had not been satisfied.
 
 
 II. Discussion
 
 
 3
 We review the district court's determination of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). When the highest state court has not ruled on a question of state law, our task is to predict how that court would rule on the issue. Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir. 1984).
 
 
 4
 Under Oklahoma's Governmental Tort Claims Act ("GTCA"), a political subdivision can only be required to indemnify an employee for a judgment if the court "determine[s] by a preponderance of the evidence that [all of the statutory requirements are satisfied]." Okla. Stat. tit. 51, § 162(B)(4). This appeal involves the following statutory requirements for indemnification:
 
 
 5
 that:
 
 
 6
 ...
 
 
 7
 c. the employee, in committing the acts or omissions upon which a judgment or settlement has been rendered was acting in good faith and within any applicable written administrative policies known to the employee at the time of the omissions or acts alleged;
 
 
 8
 d. the employee was acting within the scope of employment at the time that the acts or omissions upon which a judgment or settlement has been rendered were committed by the employee....
 
 
 9
 Id. § 162(B)(4)(c)-(d).[3] The GTCA requires that these elements "shall be tried to the court, sitting without a jury." Id. § 162(B)(1).
 
 
 10
 The district court ruled that Little was not entitled to indemnification, because (1) he did not act in good faith in committing the acts that constituted excessive force; (2) he was aware of and did not comply with written policies that prohibit the use of excessive force; and (3) he did not act within the scope of his employment. Lampkin and Little object that the district court's factual findings were flawed and inadequate to support its denial of indemnification. They argue that the district court erred in relying on jury findings and its own denial of qualified immunity when it found that Little did not act in good faith. In addition, they argue that the district court erroneously relied upon materials that were not admitted as evidence at trial, without holding a separate evidentiary hearing. Finally, they argue that the court ignored relevant stipulations when it made its findings. We consider each of the three required statutory findings in turn.
 
 
 A. Good Faith
 
 
 11
 First, the district court found that Little did not act in good faith in committing the acts of excessive force, as required by subsection 162(B)(4)(c). In making this determination, the district court relied on the jury verdict and the court's ruling denying qualified immunity. The court stated:
 
 
 12
 A jury has determined that Defendant Little was not acting in good faith when he used excessive force against Plaintiff, and this court denied Defendant Little qualified immunity. "If a plaintiff alleges a police officer has used excessive force in violation of the Fourth Amendment, the qualified immunity inquiry becomes indistinguishable from the merits of the underlying action." Guffey v. Wyatt, 18 F.3d 869, 873 (10th Cir.1994). "The majority of other circuits have taken a similar position. An officer cannot have an objectively reasonable belief that the force used was necessary (entitling the officer to qualified immunity) when no reasonable officer could have believed that the force used was necessary (establishing a Fourth Amendment violation) Wilson v. Spain, 209 F.3d 713, 716 (8th Cir.2000)." [sic][4]
 
 
 13
 Equating the jury's finding of excessive force with the court's denial of qualified immunity with findings of bad faith, the court concluded: "Accordingly, consistent with the evidence and testimony at trial, the jury determination and this court's prior rulings, the court finds Defendant Little was not acting in good faith when he used excessive force against Robert Lampkin." The court stated no other basis for its finding.
 
 
 14
 The trial court erred in relying on the jury verdict and the court's earlier denial of qualified immunity. The court's reliance on the jury's findings contradicts the GTCA's requirement that the court determine "without a jury" whether an employee is entitled to indemnification. Okla. Stat. tit. 51, § 162(B)(1). Moreover, even if the statute permitted the court to rely upon jury findings, the jury's determination that Little used excessive force against Lampkin did not require a finding of bad faith. Rather, excessive force requires an inquiry into the objective reasonableness of an official's actions, Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir.2001) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)), as opposed to an inquiry into the official's state of mind.
 
 
 15
 Nor did the court's ruling denying qualified immunity to Little require a finding of bad faith. An official is not entitled to qualified immunity if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (alteration in original) (quoting Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)). The standard "focuses on the objective legal reasonableness of an official's acts," id. at 819, 102 S.Ct. 2727, and a denial of qualified immunity does not require a finding that the official acted without good faith, which is a subjective inquiry. Moreover, the district court specifically relied on the jury's verdict of excessive force when it denied Little qualified immunity. For these reasons, it is clear that the court did not make a finding of bad faith when it ruled on qualified immunity.
 
 
 16
 Neither the qualified immunity inquiry nor the excessive force inquiry is coterminous with the questions of good faith and entitlement to indemnification. The excessive force inquiry grows out of the Fourth Amendment right to be free from unreasonable searches and seizures. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2157, 150 L.Ed.2d 272 (2001). In contrast, "the goal of qualified immunity" is "to `avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" Id. at 2156 (quoting Harlow, 457 U.S. at 818, 102 S.Ct. 2727). Finally, a policy of indemnification aims to lessen the burdens of personal liability that employees may face as a result of their acts as employees. These distinctions demonstrate that the district court's reasoning, which assumed that the three inquiries are equivalent, was erroneous.
 
 
 17
 When faced with an application for indemnification, the court is required to determine by a preponderance of the evidence and without a jury whether the employee acted in good faith. Okla. Stat. tit. 51, § 162(B)(1), (4). The district court did not make such an independent determination here. It relied on jury findings, and it improperly equated objective findings of excessive force and qualified immunity with the subjective finding of bad faith. We must therefore remand for the court to make a finding based on the evidence.
 
 
 18
 
 B. Compliance with Written Administrative Policies
 
 
 
 19
 Next, the district court found that Little did not act in compliance with applicable written administrative policies of which he had knowledge, and that he therefore failed to satisfy the second requirement of subsection 162(B)(4)(c). The court based this conclusion on the Okmulgee County Sheriff's Office's policy manual, which states that "no officer will use more force in any situation than is reasonable and necessary under the existing circumstances. Any force used will be in accordance with state law and established departmental policies." In addition, the court noted that Little was certified by the Council on Law Enforcement Education and Training ("CLEET"), which has a policy that defines and prohibits excessive force. Lampkin and Little argue that the court erred in relying on this evidence, because it was not presented at trial or at a separate evidentiary hearing.
 
 
 20
 The Oklahoma Supreme Court has not addressed whether, when considering an application for indemnification, the court may rely on new evidence without holding an evidentiary hearing, and our task is to predict how that court would rule on the issue. Daitom, 741 F.2d at 1574. In Groseclose v. City of Tulsa, the Oklahoma Supreme Court held that, when considering an application for indemnification, the court may rely solely on evidence that was presented at trial and need not hold a new evidentiary hearing. 990 P.2d 828, 833 (Okla.1998). The court reasoned that a new evidentiary hearing was unnecessary because the judge had heard the evidence presented at trial. Id. This is not true of new evidence, however, and Groseclose's reasoning persuades us that the Oklahoma Supreme Court would require a hearing if new evidence is required for purposes of an indemnification application.
 
 
 21
 We therefore hold that the district court improperly relied upon new evidence.[5] On remand, the court should hold an evidentiary hearing if this new evidence is necessary to its determination of whether to grant or deny the application for indemnification.
 
 
 C. Scope of Employment
 
 
 22
 Finally, the district court concluded that Little did not act in the scope of his employment, as required by the indemnification provision of the GTCA. Okla. Stat. tit. 51, § 162(B)(4)(d). The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority...." Id. § 152(9). Good faith, then, is crucial to the definition of scope of employment. In its indemnification ruling, the district court did not make an adequate determination of bad faith, but concluded: "As this court found during the trial in this matter, Defendant Little's actions were constrained by policies not of his own makings [sic]. The use of excessive force was not within the realm of his grant of authority and was not exercised in good faith."
 
 
 23
 The district court's reasoning seems to rely again on jury findings and the court's qualified immunity ruling. For the same reasons indicated above, we conclude that, to the extent that it relied upon these two rulings, the district court failed to make the required determination that bad faith removed Little from the scope of his employment. See also Overall v. State ex rel. Dep't of Pub. Safety, 910 P.2d 1087, 1093 (Okla.Ct.App. 1995) (holding that a finding of good faith for the purposes of determining whether an officer has acted in the scope of employment is not necessarily inconsistent with a determination that the officer's conduct did not satisfy another, objective standard).
 
 
 24
 We also note that the inquiry into whether the employee acted in good faith for purposes of the scope of employment and the inquiry into whether the employee acted in good faith in committing particular acts are not identical. For purposes of determining the state's or political subdivision's liability for its employees' acts under the GTCA, Okla. Stat. tit. 51, § 153, a finding that an officer "at some time during the episode ... went beyond the bounds of good faith ... is not necessarily inconsistent with" a finding that the officer acted within the scope of his employment. DeCorte v. Robinson, 969 P.2d 358, 362 (Okla.1998) ("Robinson's initial actions may well have been taken on behalf of his employer, and been within the scope of his duties. However, the jury obviously determined that during the course of events his actions exceeded that scope.").[6] Subsection 162(B)(4)(d) of the indemnification provision relies upon the same definition of scope of employment that is used in section 153 for purposes of liability. In contrast, subsection 162(B)(4)(c) requires good faith with respect to the specific acts or omissions for which an officer has been found liable. Therefore, we find that the rule of DeCorte applies, and a finding that Little committed particular acts in bad faith would not preclude a finding that he acted within the scope of his employment.
 
 
 25
 Finally, appellants argue that, because the County stipulated that Little acted in good faith within the "scope of his authority," the County is precluded from contesting whether Little acted within the scope of employment for indemnification purposes. We disagree. The district court held in a prior ruling that the County had admitted that Little was "acting in his official capacity" and "as an employee" of the County.[7] The court ruled that the County was bound by this admission and therefore could not argue at a later stage in the proceedings that Little was not a County employee. The court based its ruling in part on the County's adoption of the undisputed facts, arguments, and authorities in Little's brief supporting his motion for summary judgment. Attached to Little's motion was an affidavit in which Little stated that, during the arrest, he "was acting in good faith ... and within the scope of [his] commission from the Okmulgee County, Oklahoma Sheriff's Office." The primary issue in the summary judgment motions was whether Little was acting in an objectively reasonable manner that entitled him to qualified immunity, not whether he had acted in good faith.[8] Moreover, "scope of employment" carries a specific meaning under the GTCA. We therefore find the County's position in its summary judgment motion insufficient to compel the conclusion that Little was acting within the scope of his employment.
 
 
 26
 For these reasons, we remand for a new factual finding on the scope of employment question.
 
 
 III. Conclusion
 
 
 27
 A court acts as fact finder when it decides whether to grant an application for indemnification. In this case, however, the court has not made the factual determinations regarding good faith and scope of employment that the GTCA requires. To the extent that it made a finding regarding compliance with applicable written policies, the court impermissibly relied on evidence that was not presented at trial or in a separate evidentiary hearing. We therefore VACATE the decision below and REMAND for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appealSee Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.
 
 
 [1]
 Other defendants in the case either settled with the plaintiff or were granted summary judgment
 
 
 [2]
 The facts alleged by Lampkin are recited inLampkin v. Little, 203 F.3d 835, 2000 WL 158939, at *1 (10th Cir. Feb.15, 2000) (unpublished). In that decision, we dismissed for lack of jurisdiction Little's appeal of the district court's denial of summary judgment.
 
 
 [3]
 The satisfaction of the other prerequisites, Okla. Stat. tit. 51, § 162(B)(4)(a)-(b), (e)-(f), is undisputed
 
 
 [4]
 No part of the second internal quotation comes fromGuffey v. Wyatt or Wilson v. Spain. The sentence beginning, "An officer cannot ..." comes from Katz v. U.S., 194 F.3d 962, 969 (9th Cir.1999), which the Supreme Court reversed in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2154, 150 L.Ed.2d 272 (2001) (holding that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest").
 
 
 [5]
 The County argues that it was established at trial that Little was CLEET-certified. This point is of little significance, however, because no evidence of CLEET'swritten policies was introduced.
 
 
 [6]
 The Oklahoma Supreme Court has also held that an officer cannot have acted in the scope of his employment if he committed an offense that requires malice or bad faithParker v. City of Midwest City, 850 P.2d 1065, 1068 (Okla. 1993) (citing with approval Houston v. Reich, 932 F.2d 883, 890 (10th Cir.1991)). Excessive force claims, however, are judged by a standard of objective reasonableness. Medina, 252 F.3d at 1131 (citing Graham, 490 U.S. at 395, 109 S.Ct. 1865). Parker, which the court distinguished in DeCorte, 969 P.2d at 362, is therefore inapplicable.
 
 
 [7]
 An "employee" under the GTCA "means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis...." Okla. Stat. tit. 51, § 152(5). Little was employed as a police officer for the Muscogee (Creek) Nation but also held a commission from the Okmulgee County Sheriff's Office. This commission authorized him to assist law enforcement agencies outside Indian country in emergency situations
 
 
 [8]
 For this reason, and because of the generality of the statement in Little's affidavit, we also reject the contention that the County has admitted, for purposes of subsection 162(B)(4)(c), that Little acted in good faith when he committed the particular acts giving rise to the claim
 
 
 
 28
 MURPHY, Circuit Judge, dissenting.
 
 
 29
 I fully agree with the majority that if the district court had merely relied upon the jury verdict and the qualified immunity ruling, its determination that Little acted in bad faith would constitute error. The district court did not, however, rely upon the jury verdict and its earlier qualified immunity ruling. Rather, it made an independent assessment of the evidence presented at trial in making its determination. Because this independent assessment satisfies Oklahoma law and is not clearly erroneous, the district court was correct in denying Little indemnification. Accordingly, I respectfully dissent.
 
 
 30
 As noted by the majority, Little is entitled to indemnification under the Oklahoma Governmental Tort Claims Act ("GTCA") only if the district court determines by a preponderance of the evidence that he satisfies all the requirements of Okla. Stat. tit. 51, § 162(B)(4). Majority Op. at 1210. Among these requirements is that Little acted in good faith. Okla. Stat. tit. 51, § 162(B)(4)(c). In determining that Little did not act in good faith, the district court stated, "Accordingly, consistent with the evidence and testimony at trial, the jury determination and this court's prior rulings, the court finds Defendant Little was not acting in good faith when he used excessive force against Robert Lampkin." Dist. Ct. Op. at 4 (emphasis added). The majority interprets that statement to mean that the district court relied on the jury verdict of excessive force and the earlier denial of Little's qualified immunity summary judgment motion. See Majority Op. at 1211-12. The district court, however, did not say "relying on," but rather "consistent with." Simply because the district court believed its own finding of bad faith was consistent with the jury's verdict and the denial of qualified immunity does not mean the court felt compelled to find bad faith by these earlier rulings. Given that bad faith is a factual finding, the only reading of the district court's statement that it found bad faith is that it weighed the evidence presented at trial. See Nail v. City of Henryetta, 911 P.2d 914, 917-18 (Okla.1996) (holding scope of employment, including good faith requirement, is a factual question).
 
 
 31
 Furthermore, it is customary to assume the district court properly performed its review of the record. See, e.g., Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) (assuming district court reviewed magistrate's report de novo). That assumption is verified here by the district court's express statement that it did so, a proposition which this court should not question. See Clark v. Poulton, 963 F.2d 1361, 1368 (10th Cir.1992). In addition to the district court's explicit statement that it considered "the evidence and testimony at trial," the remainder of the district court's discussion of the indemnification requirements reveals that it was primarily concerned with the evidence presented at trial. The district court began its evaluation of the indemnification factors by noting that under Oklahoma law it was empowered to "rely on the evidence from trial in making findings relating to [the indemnification] requirements." Dist. Ct. Op. at 3 (citing Groseclose v. City of Tulsa, 990 P.2d 828, 832-33 (Okla.1998)). Furthermore, in discussing two other indemnification requirements, the district court found that Little had satisfied the requirements "based on the evidence."
 
 
 32
 Throughout its opinion the court focused on the evidence presented at trial and explicitly stated that it considered the evidence in finding bad faith. I am at a loss for what more is necessary to establish the district court's independent finding of lack of good faith. Since, the record does not indicate that the court's finding of bad faith is clearly erroneous,[1] the court's judgment should be affirmed.
 
 
 
 Notes:
 
 
 [1]
 There was evidence presented at trial that Little spat on Lampkin; told Lampkin that "[w]e're the police, we do whatever we want"; said to Lampkin that the police would take his car and damage it; informed Lampkin that "[you're] never going to make it through Okmulgee again that we won't have a piece of your ass"; put "his crotch against [Lampkin's] and hunched [Lampkin] three to four times"; held Lampkin close to on-coming traffic; dropped Lampkin on the ground from mid-air; placed Lampkin in a chokehold, telling him "good, I mean to"; stated that he hoped Lampkin would die; and kicked Lampkin